### BASCOM COLEMAN V. THE STATE.

No. 2502.  Decided June 11, 1913.

**1.—Abandonment—Seduction—Continuance.**

Where, upon trial of abandonment by defendant of the woman he married after her alleged seduction. the case was reversed on appeal and other grounds, the overruling of the application for continuance need not be considered.

**2.—Same—Charge of Court—Definition of Offense—Accomplice Testimony.**

Where, upon trial of abandonment, the court's charge on the definition of seduction, marriage, and abandonment thereafter and accomplice testimony

probably did not present reversible error, yet the court should apply more fully the law applicable to the case.

**3.—Same—Requested Charges—Promise of Marriage—Lust.**

Where, upon trial of abandonment of a woman after seduction and marriage, the evidence showed that the prosecutrix was probably actuated by other motives than defendant's promise to marry her in yielding herself to sexual intercourse, the court should have submitted defendant's requested charge presenting this issue.

**4.—Same—Charge of Court—Chastity of Prosecutrix.**

Where, upon trial of abandonment of a woman after seduction and marriage, there was evidence that defendant had sexual intercourse with the prosecutrix before the time she claimed that he had such intercourse upon a promise to marry, the court should have submitted this issue as requested.

**5.—Same—Evidence—Contradicting Witness.**

Where, upon trial of abandonment of a woman upon marriage after seduction, the State was permitted to introduce testimony that prosecutrix left home on account of her pregnant condition, the defendant should have been permitted to show her contradictory statements and that this was not the cause of her leaving home.

**6.—Same—Evidence—Declarations of Prosecutrix.**

Upon trial of abandonment of a woman after seduction by defendant after marriage, it was error to admit testimony as to the declaration of prosecutrix that she felt she had been disgraced because she became pregnant with child by the defendant and that she left home at night, etc. Following Bailey v. State, 30 S. W. Rep., 669.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of abandoning a married woman after seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. S. Crumpton* and *N. L. Dalby,* for appellant.—On question that continuance should be granted involving chastity of an alleged seduced female: Kelley v. State, 33 Texas Crim. Rep., 31; Sharp v. State, 61 Texas Crim. Rep., 247, 134 S. W. Rep., 333.

On question of corroborating promise of marriage: Spenrath v. State, 48 S. W. Rep., 192; Fine v. State, 77 S. W. Rep., 806.

On question of refusing defendant's special charges with reference to chastity of prosecutrix: Creighton v. State, 41 Texas Crim. Rep., 101; Bishop v. State, 144 S. W. Rep., 278; Simmons v. State, 54 Texas Crim. Rep., 619, 114 S. W. Rep., 841.

On question of admitting declarations of prosecutrix that she left home in disgrace: Bailey v. State, 30 S. W. Rep., 669.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted under the statute denouncing punishment for abandoning the woman he married after her alleged seduction.

There are two theories in the case, and the evidence is sharply in conflict as witnesses could well make it. The girl, Hattie Burton, testified appellant had been paying attention to her for some time, and they became engaged. One Sunday in September she, appellant, Wolfe, her uncle, and Miss Blocker went in a wagon some ten or twelve miles to Red River bottom for the purpose, it is stated, of gathering pecans. This at least is Wolfe's testimony, and some of the evidence tends to corroborate him. Wolfe says they got some pecans. Upon reaching their destination, or at least a certain point in the bottom, appellant and Miss Burton got out of the wagon and went one direction, leaving Wolfe and Miss Blocker. After being gone a while defendant and prosecutrix returned to the wagon; finding that Wolfe and Miss Blocker were not there, they retraced their steps, each time going somewhere between a quarter and a half mile from the wagon. On the second trip Miss Burton testified she had intercourse with defendant; that he told her they were going to get married; in other words, her testimony was to the effect that at the time they had intercourse he promised to marry her. After this occurrence they returned to the wagon, and finding that Wolfe and Miss Blocker had not returned they climbed into the wagon and sat upon the spring seat, where, in the course of a half hour Wolfe and Miss Blocker returning found them chatting pleasantly, in a fine humor. They returned home and that night went to church. It seems from the testimony that the question of marriage was not thereafter discussed between them, but that intercourse occurred quite often; in fact so often that both appellant and prosecutrix testified they had no idea of the number of times. This continued for more than a year. She became pregnant. She states she informed appellant of her condition, and he denied she was in such condition. This went on for some time, under her testimony, and until she became finally convinced of her pregnancy, whereupon she wrote a letter to defendant. This letter is as follows:

"Mr. Bascom Coleman.

My Dear Sweetheart: I thought I would write a few lines. How are you by now, fine I hope? I wish I could see you; sure hated to leave you Sunday. I had something to tell you. Well, Bascom, there's something wrong, you know what I mean. Now, there is something got to be done, for I will die before I will stand my folks much longer, and I hope you will help me out in my trouble. Write and tell me what you will do. I wish I could see you, although I can't.

As ever,

Hattie."

This letter was put in evidence, and was written after she finally determined that she was pregnant. Appellant's side of the case admits intercourse, but denies emphatically there was any promise of marriage, and he further denies that the question of marriage was ever discussed

between them; that she engaged in· the intercourse willingly, and for her own gratification. It is unnecessary to go into a detailed statement of his testimony.. This issue was sharply drawn, she testifying to a promise of marriage, and he denying it. They concur in their testimony that the intercourse kept up for considerably over a year, nearly a year and a half—as often as opportunity presented itself. This letter was introduced before the jury by the State. Something like a week before appellant's arrest under a charge of seduction filed by prosecutrix, the prosecutrix left home at night without the knowledge of the family, and went into the State of Oklahoma, where she engaged her services as nurse in a family. She says she did this to get away from home and hide her shame. On the night she left home, after going some distance, she spent the night at a stranger's; the next morning she went to Oklahoma. One of the witnesses, driving in a vehicle, carried her to her point of destination, and engaged her in conversation. In this conversation she stated to witness that she left home on account of family troubles; she could not get along with lady members of the family, and for that reason she was leaving home. She also denied in the conversation that she and appellant were going to be married. The witness thought she was running away to meet appellant at some point to marry him on account of some objection on· the part of the family to their marriage. This, however, she denied. Some of this testimony was excluded by the court on objection of the State, which forms one of the questions for discussion. Her father finally discovered her whereabouts and brought her home. He then had her file complaint against appellant charging him with seduction, upon which appellant was arrested. Without going into a detailed statement of the evidence, which covers a considerable part of the statement of facts, the evidence went to show that appellant was directly or indirectly forced to marry her after the charge of seduction was filed. That part of the testimony it is deemed unnecessary to discuss. The evidence further shows that shortly after the arrest appellant did marry the girl under protest. This occurred at the residence of the girl's father. Appellant left that night, and so far as the evidence goes to show, did not stay with her after the marriage. It seems after the marriage appellant went to visit relatives for some days across the Texas line in Arkansas. Something like ten days after the marriage appellant was arrested under a charge of abandonment of his wife. This may be a sufficient statement of the case.

1. There was an application for continuance. Without discussing this, as it may not occur upon another trial, we are of opinion that as the matter is presented in the record the continuance ought to have been granted, but, as stated, it is unnecessary to discuss the reasons for this conclusion. The evidence may be obtained upon another trial.

2. Many criticisms have been leveled at the charge of the court, and refusal to give special instructions. The court, applying the law to the case, charged as follows: "Our statute provides, that if any person, by. ·promise to marry, shall seduce an unmarried female under the age of

twenty-five years, and shall have carnal knowledge of such female, you are instructed that seduction as used in the statute means to lead an unmarried female under twenty-five years of age away from the path of virtue; to entice or persuade her by means of a promise of marriage to surrender her chastity, and have carnal intercourse with the man making the promise. The promise of marriage by the man, and the yielding of her virtue in consideration of that promise, constitutes the gist of the offense. The offense is not complete until the female has been seduced,—that is, corrupted, deceived, drawn aside from the path of virtue which she was pursuing. I charge you, then, that if you believe from the evidence, beyond a reasonable doubt, that the defendant, on or about the 10th day of September, A. D. 1912, as alleged, in the County of Bowie and State of Texas, did have carnal knowledge of Hattie Burton, and that she, the said Hattie Burton, was then and there an unmarried female under the age of twenty-five years, and that he had such carnal knowledge of the said Hattie Burton, in the manner and by the means stated in the foregoing definition of seduction; and you further believe, from the evidence, beyond a reasonable doubt, that the defendant, Bascom Coleman, after prosecution had been begun against the said Bascom Coleman for said offense of seduction, and before said Bascom Coleman had pleaded to an indictment for said offense in a court of competent jurisdiction, he, the said Bascom Coleman, and her, the said Hattie Burton, were lawfully married, on or about the 24th day of November, 1912, and thereafter, and before the expiration of two years therefrom, and without fault upon the part of the said Hattie Coleman, who had been Hattie Burton, he, the said Bascom Coleman, did, in Bowie County, State of Texas, on or about the 24th day of November, 1912, unlawfully abandon the said Hattie Coleman, you will find the defendant guilty," etc. Then follows a general charge on accomplices, and the further charge applying this phase of the law, that the jury could not convict appellant upon her testimony alone, unless the jury should find her testimony is true, and that it connects the defendant with the offense charged, and then the jury could not convict the defendant upon said testimony unless they should further believe that there is other testimony corroborative of the accomplice testimony, tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense charged. Many criticisms are indulged against this charge, and, as before stated, the refusal of the court to give instructions requested. One of appellant's requested instructions applies the law more pertinently and in much better shape than did that given by the court on the question of accomplice testimony. The court's charge was very general. While it might not be sufficient to reverse upon this question, still on another trial the court should apply more fully the law applicable to the case.

3. Another charge was requested and refused, which is as follows: "You are instructed that before you can convict the defendant, Bascom

Coleman, you must find from the evidence, beyond a reasonable doubt, taking into consideration the charge on accomplice's testimony hereinbefore given you, that the defendant, Bascom Coleman, promised to marry the witness Hattie Coleman, and that the witness Hattie Coleman submitted to the embraces of the defendant and had carnal intercourse with the defendant while she was chaste, and while she was relying solely and wholly upon an unconditional promise on the part of defendant to marry her, and even though you may believe that defendant had carnal intercourse with said Hattie Coleman, and even though you may also believe that defendant promised to marry said Hattie Coleman, if at the time of such intercourse, if any, between defendant and said Hattie Coleman, was actuated either in whole or in part by lust or passion, or any such consideration or motive, or if any such promise of marriage by defendant was conditional upon the said Hattie Coleman becoming pregnant from such intercourse, or any other condition, or if you have a reasonable doubt that the said Hattie Coleman may have been actuated by any such motive as aforesaid, or that such promise to marry may have been so conditioned, in any such event, you will find the defendant not guilty." We are of opinion, under the evidence, this charge ought to have been given. There is evidence which has not been heretofore stated to the effect that she was not a chaste woman before appellant had anything to do with her. The testimony was of a positive nature, reflecting upon her chastity. The witnesses testified that they had hugged and kissed her, and matters of that sort before defendant had anything to do with her. They, however, state they had not had sexual intercourse with her. The prosecutrix testified that the first act of intercourse was in the Red River bottom on Sunday in September, above mentioned, and under promise of marriage. Appellant's testimony is to the effect that he had had intercourse with her long prior to that time, and that at no time had he promised to marry her. She seems to have placed the first promise to marry at the time of the intercourse in September. Appellant testifies he had had intercourse with her as far back as in June prior to that time. This was in 1911. The other witnesses testifying to having hugged and kissed her say it occurred in the winter of 1910 and early part of 1911, and before defendant became in any way connected with her. Under the definition of seduction it is necessary that the woman be chaste. If she is not she is not subject to seduction. Under the testimony of both they might have been guilty of fornication, but if defendant's testimony is true, or the testimony of the other witnesses testifying in this respect is true, there is a question of chastity and purity. This charge, or a similar one, ought to have been given. She stated to appellant she had been intimate with two or three other men.

4. Another charge was asked to the effect that if there was no promise of marriage subsequent to the first act of intercourse, then she would not be chaste and the jury should acquit. It is not undertaken here to state the language of the charge, but that was the substance. This was

refused. Under defendant's testimony this was squarely an issue in the case.

5. Charges were asked also to the effect that if the girl submitted herself to defendant for any other reason than on account of promise of marriage, to gratify her lust or matters of that sort, defendant was entitled to an acquittal. This charge was requested by appellant and refused by the court. This was error. It is deemed unnecessary to cite the authorities here; they are numerous, coming down as late as 141 S. W. Rep.

6. There was a bill of exceptions reserved to the action of the court excluding testimony offered by the defendant in rebuttal of the testimony introduced by the State, to the effect that prosecutrix left home on account of her pregnant condition. This was her statement and this testimony they proposed to contradict by the witness who carried her into the State of Oklahoma. Talking to him she placed her leaving home on different grounds entirely, towit: on account of unpleasantness of her home and home surroundings, that she could not remain with her father's family under such conditions. The State having introduced her statements, defendant had the right to introduce statements made by her contradictory of these statements. This would hardly need citation of authorities at this late day. It is statutory in this State.

7. It is also urged as error that the court permitted the prosecutrix to give her reasons why she left home at night, which were as follows: "She thought she could leave home and her folks would not find out what was the matter with her. That she felt she had been disgraced. That she walked a part of the way; that she walked to within about three miles of the river, and Leonard Holloway carried her the balance of the way to Hayworth, Oklahoma; that she left home at night about dark; that she left home by herself and walked until about 8:30 o'clock at night; that she walked about five miles that night and stayed at a stranger's house; that in the morning she got on a wagon and went on toward the river; that she got on this man's wagon and rode about a mile and then got off and walked past where Leonard Holloway lived about a quarter of a mile and he came and got her and carried her to Hayworth, Oklahoma; that the next morning she went on to Idabel, Oklahoma, and got a position in a family to work; that she left that place because her father came after her and found her Friday evening." There were a number of objections urged to this testimony which we deem unnecessary to mention. The court signs this bill by qualifying it with the following explanation: "The statement of facts will show that defendant left Texas and went to Arkansas; after defendant left the State I permitted the State to prove what became of the alleged injured party as set forth in the bill of exception. With this explanation I approve and order said bill be filed." The bill is signed by the judge. This testimony was not admissible. See Bailey v. State, 30 S. W. Rep., 669, a case directly in point. We deem it unnecessary to discuss this matter. This testimony ought not to have gone before the

jury. It could not have affected the defendant in any way except injuriously by parading the condition of the girl and her reasons for leaving home. The judge's qualification that he permitted this testimony because defendant had gone on a visit to Arkansas affords no legal reason for his ruling.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*