### Bascom Coleman v. The State.

No. 3743. Decided October 27, 1915.

Rehearing denied November 24, 1915.

#### 1.—Abandonment—Seduction—Marriage—Continuance.

Where defendant's application for continuance showed that prior to the time that prosecutrix says defendant led her astray under a promise of marriage, the absent witness would testify that he saw her in the act of carnal intercourse with another, and the record showed that the witness had previously testified to such statement, and had been placed under a bond to attend the court, and it was not shown that defendant was aware of any fact that would put him upon inquiry that the witness had left the State, the continuance and motion for new trial should have been granted.

#### 2.—Same—Evidence—Imputing Crime to Another.

Where, upon trial of abandonment after seduction and marriage, defendant attempted to prove that before the alleged seduction, the prosecutrix was found in a compromising position with another whom the infant which prosecutrix bore resembled, which testimony the court refused to admit because said party was related to prosecutrix, and was not sufficiently identified, held, that such testimony was admissible.

#### 3.—Same—Complaint—Indictment—Beginning of Prosecution—Duress—Divorce.

The filing of a complaint and arrest thereon charging defendant with seduction was the beginning of the prosecution, and the marriage must have taken place before pleading to the indictment found, to avoid prosecution for seduction, but if the abandonment thereafter showed that defendant did so because he was compelled to marry prosecutrix under duress, he should have been permitted to show this fact, as well as that he immediately brought suit for divorce.

#### 4.—Same—Evidence—Decree of Divorce.

Upon trial of abandonment after seduction and marriage, there was no error in excluding the judgment decreeing a divorce to defendant after said marriage, as the State could not be bound thereby in a criminal prosecution against defendant for abandonment.

#### 5.—Same—Remarks by Judge—Practice on Appeal.

Where the judgment was reversed and the cause remanded on other grounds, the remarks made by the trial judge during the trial of the case need not be considered on appeal.

Appeal from the District Court of Bowie. Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of abandonment after seduction and marriage; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*J. S. Crumpton,* for appellant.—On question of refusing a continuance on testimony showing prior sexual intercourse of prosecutrix with others: Kelley v. State, 33 Texas Crim. Rep., 31; Sharp v. State, 134 S. W. Rep., 333; Hill v. State, 18 Texas Crim. App., 673.

On question of insufficiency of evidence: Putnam v. State, 29 Texas Crim. App., 454; Gleason v. State, 178 S. W. Rep., 550.

*C. C. McDonald,* Assistant Attorney General, and *Hugh Carney,* District Attorney, for the State.—On question of continuance: Harvey v. State, 35 Texas Crim. Rep., 545; DeAlberts v. State, 34 id., 508; Stouard v. State, 27 Texas Crim. App., 1.

On question of duress: Ethridge v. State, recently decided.

HARPER, JUDGE.—Appellant was convicted of abandonment after seduction and marriage and his punishment assessed at six years confinement in the State penitentiary.

The testimony of appellant would show that he admitted having sexual intercourse with the young lady on a number of different occasions, but he most emphatically denies it was under promise of marriage, or that he was ever engaged to marry her. This is the second appeal in this case, the opinion on the former appeal being reported in 71 Texas Crim. Rep., 20, 158 S. W. Rep., 1137. As the opinion in that case states the evidence rather fully, we deem it necessary to state only that portion of the testimony rendered necessary in passing on the various bills of exception.

The first bill relates to the court overruling his second application for a continuance. This continuance was sought on account of the absence of W. S. Strain. He states the witness would swear if present, that "in July, 1911, while on the road leading from Oak Grove to the house of prosecutrix, he observed prosecutrix and one whom he took to be Put Bodwell in the act of sexual intercourse." This is prior to the time that prosecutrix says appellant led her estray under a promise of marriage. The materiality of this testimony is made more apparent by other testimony in the record.

Emmett Phillips testified he went with the prosecutrix prior to the date of the alleged seduction, to church and other places. That she permitted him to place his arms around her, hug and kiss her. Wesley Hazlewood testified that prosecutrix had willingly permitted him to kiss her on divers and sundry occasions. J. R. Morrison testified he had occasion to go to the home of prosecutrix to see her father, Mr. Burton. That no one else was at home except prosecutrix, and she was dressed in men's clothes, and pulled a razor out of her pocket. That he asked her if she was fixing to shave, and she merely laughed. That on another occasion he was driving by the home of prosecutrix and he saw her dressed in men's clothes sitting astride of the water shelf on the gallery, in about fifteen steps of the public road, and in plain view of the road. Morrison says his daughters were with him on this latter occasion, and one of them remarked: "I will swear to God, Hattie," when Hattie, prosecutrix, replied, "I am not ashamed." That he saw her dressed in men's clothes on other occasions. This all occurred prior to the alleged seduction, and one of the contentions of appellant is, that the prosecutrix was not a chaste and virtuous woman

at the time of and prior to the date on which he was charged with this offense. At this date Miss Hattie was nineteen or twenty years of age. If he could have followed this testimony with the testimony of the witness Strain, it is readily seen how material it would have been on the issue of the young lady's virtue and chastity. The court overruled the application on account of lack of diligence. It appears from the record that once before the witness had failed to attend court, and an attachment was issued and he was placed under bond, and after being placed under bond had attended court regularly, and was present at the term of court immediately preceding the one at which the trial was had. On the first day of this term of court, the witness failing to appear, appellant at once had other process issued for him to Bowie County. In the contest to the motion it is shown that since the last term of court the witness Strain had gone to Oklahoma. If appellant knew, or was shown to have been made aware of any fact that would put him upon inquiry whereby he could have ascertained that the witness had gone to Oklahoma, then certainly he would have been lacking in diligence. While the fact is shown that the witness had perhaps gone to Oklahoma at the time the last process was issued at the beginning of this term of the court, yet there is nothing in the record that would suggest that appellant was aware of the fact, or in possession of any fact that would put him upon inquiry so as to ascertain that fact. He had had the witness placed under bond to attend court; the witness had attended the two terms immediately preceding the term of the court, and we think the continuance should have been granted, for it is shown that upon a former occasion the witness had testified to the statement appellant states he desired to prove by him, which was upon a most material issue in the case, and if true would entitle appellant to an acquittal.

On the trial of the case, while the prosecutrix was testifying, appellant proved by her that the color of her hair was black or dark; that she was dark skinned, and that appellant also had dark hair and was of dark complexion. He then proved by her that the baby, which at the time of this trial was between two and three years old, had red hair and was of light or ruddy complexion, and was freckled. He also proved that Bud Wolfe was red haired and had a ruddy complexion, and was making the home of the father of prosecutrix his home at the time of and for several years prior to the alleged seduction. That she was about twenty years old at the time, and that Bud Wolfe was about twenty-four years of age; that he was her uncle. After making this proof he called G. C. Sargent as a witness who, if he had been permitted, would have testified: "That he had occasion to stop in front of the home of the parents of the prosecutrix after night during the year 1911, and that he looked through a window in said home and saw Bud Wolfe, a man whom he recognized; later a woman came by and the said Wolfe caught hold of her and pulled her down in his lap. That he, witness, was well acquainted with the Burton family. That he knew that there were only two grown women that resided on said

place, towit: the prosecutrix and her mother. That he knew that it was not her mother and that taking the size and features and because of his acquaintance with the prosecutrix he took it to be she that was sitting in the lap of said Wolfe. And that to the best of his knowledge it was prosecutrix that he saw in the lap of the said Bud Wolfe." The court erred in sustaining objection to this testimony. The fact that Bud Wolfe was her uncle would go to the weight to be given the testimony and not its admissibility, and whether or not his testimony sufficiently identified the prosecutrix in this case as the woman sitting in his lap would also be upon the weight to be given it, and not go to its admissibility. He states facts that, if true, would render it morally certain that it was the prosecutrix in Wolfe's lap on that night.

Appellant seems to contend that the marriage must have taken place after indictment found before a prosecution could be maintained for abandonment after seduction and marriage. This is not a correct construction of the statute. A prosecution is begun by the filing of the complaint charging him with the offense. It is the offer of marriage that must take place before pleading to an indictment for the offense. The facts in this case would show that a complaint was filed charging appellant with seduction, warrant was issued, and he was arrested. If those steps are taken, and appellant married her to avoid a prosecution for seduction, and then abandoned her without cause, he could be prosecuted for abandonment after seduction and marriage, and the bills raising these questions present no error. However, when it is proven that a complaint has been filed; that appellant was arrested thereon; that he subsequently married the girl, and the prosecution for seduction dismissed, this evidence would have a tendency to prove him guilty of having seduced the girl, and if appellant desired to introduce testimony that instead of marrying the girl voluntarily, he was forced and compelled to do so, he should be permitted to do so to rebut the presumption arising from the marriage that he was guilty of seduction. The State's testimony would have appellant admitting his guilt to the father, and voluntarily marrying the girl after prosecution was begun, and then abandoning her. The appellant contends that he did not admit his guilt to the father or any other person; that he told the father he had never been engaged to the prosecutrix, and refused to accompany the father to his home, and that he was then arrested. That by the acts and conduct of prosecutrix's father and brothers, Bud Wolfe and other relations he was forced to marry the girl to avoid trouble; that immediately after the marriage (the first opportunity) he left and almost immediately brought suit to annul the marriage, alleging duress as grounds why the marriage should be declared void. These facts and all evidence bearing thereon should be admitted in evidence on another trial.

But the court did not err in excluding the judgment decreeing a divorce. That judgment would not be binding upon the State in its prosecution. It was not a party to the divorce suit, and could not be bound thereby. Greenleaf on Evidence, volume 1, page 581, lays down

the following rule: "Upon the foregoing principles it is obvious that as a general rule a verdict and judgment in a criminal case, though admissible to establish the fact of the mere rendition of the judgment, can not be given in evidence in a civil action to establish the facts on which it was rendered. If the defendant was convicted it might have been on evidence of the very plaintiff in the civil action; and if he was acquitted, it may have been by collusion with the prosecutor. And beside this, and upon more general grounds, there is no mutuality. The facts are not the same, neither are the rules or decisions of the court in proceeding the same. The defendant could not avail himself in the criminal trial of any admissions of the plaintiff in the civil action, and on the other hand the jury in the civil action must decide upon the mere preponderance of the evidence, whereas in a criminal conviction they must be satisfied as to a party's guilt beyond a reasonable doubt. *The same principles render a judgment in a civil action inadmissible in a criminal prosecution,*" citing authorities.

We do not deem it necessary to discuss more particularly all the bills in regard to this matter, as the above general expression will indicate to the trial court what testimony is admissible. The judgment of the civil court has no binding effect upon the criminal court, and should not be admitted.

In other bills appellant complains of questions propounded by the trial judge, and remarks made by him during the trial of the case. We are satisfied this will not occur on another trial, and, therefore, do not deem it necessary to discuss the bills presenting this matter.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Rehearing denied November 24, 1915.—Reporter.]