LULU M. PASCHEDAG, Administratrix, Respondent,
v. METROPOLITAN LIFE INSURANCE COM-
PANY, Appellant.

St. Louis Court of Appeals, January 24, 1911.

1. LIFE INSURANCE: Non-forfeiture Statute: Pledge of Policy
to Insurer for Loan. Though a life insurance policy and the
cash surrender value thereof may be pledged by the insured to
a third person, the insurer cannot make a valid contract with
the insured to that effect, either when the loan is provided for
in the policy in the first instance, or by a subsequent amend-
ment thereto, if the loan involves an appropriation of the
net value of the policy which may be applied as a net single ·
premium for the purpose of extended insurance, as provided for
by section 7897, Revised Statutes 1899.

2. ————: Non-Payment of Premiums: Policy Automatically
Non-forfeitable: Provision for Unconditional Surrender
Value. A provision of a life insurance policy, giving an op-
tion as to a cash surrender value, greater than the single net
premium for temporary insurance provided for by section 7897,
Revised Statutes 1899, upon surrender and release of the policy
within six months after default of the payment of any premium,
provided there was no unpaid loan through the operation of
another option, did not provide an unconditional surrender
value, under section 7900, so as to make section 7897 inap-
plicable; such provision not operating as an automatic conver-
sion of the policy into a cash surrender value which might be had
at any time by insured, since the right to a cash surrender
value under said provision was conditioned upon the surrender
of the policy and execution of a release by insured within six
months after the default, and conditioned also upon there
being no unpaid loan on the policy.

3. ————: ————: ————: Pledge of Policies to Insurer for
Loan: Appropriation of Cash Surrender Value. A loan hav-
ing been given on life insurance policies by the insurer on a
pledge of the policies by a contract, which, though it did not
expressly provide for payment of the loan, implied an agree-
ment to that effect, by reciting the matter as a loan to bear
interest until a definite time, insured reserving the right to
pay it at any time and take up the policies, and the insurer
having cancelled the policies pledged, for failure to pay a
premium and interest on the loan, and having appropriated the
cash surrender value of the policies, as provided in the con-

tract for the loan, instead of issuing extended insurance as provided by section 7897, Revised Statutes 1899, the transaction should not be treated as though the policies had been surrendered for their cash surrender value and the subject-matter of the provision of the policies in respect thereto fully consummated, terminating the relation of insurer and insured, merely because insured actually received the entire amount which he might have had under any theory as the cash surrender value of the policies.

4. ————: Non-Forfeiture Statute: Parcel of Contract. The non-forfeiture statutes (sections 7897 to 7900, inclusive, Revised Statutes 1899) became parcel of a contract of insurance issued while they were in force.

5. ————: Non-Payment of Premiums: Policies Automatically Non-Forfeitable: Deducting Indebtedness: Laws Governing Right: Facts Stated. Section 7897, Revised Statutes 1899, provides that, as a rule for determining the term life insurance policies shall be in force after default in the payment of premiums, the amount of any evidence of indebtedness given to the insurer by the insured for past premium payments shall be deducted from three-fourths of the net value of the policy, and the balance shall be taken as a single net premium for temporary insurance for the full amount of the policy. This statute was amended in 1903 (Laws 1903, p. 208) so as to provide for the deduction from three-fourths of such net value *any* evidence of indebtedness, but the statute, as amended, expressly provides a rule as to policies thereafter issued only. Policies were issued in 1901 and 1902, and, after the enactment of the law of 1903, were pledged with the insurer as security for a loan made at that time, the proceeds of which were not applied to the payment of past premiums, and subsequently default was made in the payment of premiums and the principal of and interest on the loan, whereupon the insurer, in accordance with a provision of the loan contract, cancelled the pledged policies and applied their cash surrender value as a payment on the loan. The right of insured to the loan was provided for in the policies. After the death of insured, an action was brought against the insurer on the theory that three-fourths of the net value of the policies, computed in accordance with section 7897 was sufficient, taken as a single net premium, to buy temporary insurance for a longer period of time than intervened between the date of default and the date of insured's death. *Held*, that the Act of 1903 was not retrospective in its operation, and that, although the loan was made after that Act went into effect, inasmuch as the policies stipulated for the loan and they were issued before it went into effect, the whole matter and the rights of the parties with respect thereto were

to be determined under section 7897, before its amendment, said section being parcel of the contract of insurance by virtue of its being the law in force at that time; and hence that the amount of such loan could not be deducted from three-fourths of the net value of the policies, in determining whether or not they were in force, under section 7897, at the time of the death of insured.

6. ————: ————: ————: Surrendering Policies for Consideration. While the insured in a life insurance policy may, under section 7900, Revised Statutes 1899, surrender his policy and terminate the relation of insurer and insured, for a consideration adequate in his judgment, in which event the preceding sections of the statute relating to the non-forfeiture of policies will not be applicable, the consideration must be given by the insurer for such surrender, and not for some other purpose; and hence, where policies were pledged to the insurer by the insured for a loan, with the intent of repaying it and receiving back the policies, the fact that he received an adequate consideration would not relieve the insurer, upon subsequent default in the payment of premiums and interest on the loan, from issuing extended insurance required by the preceding non-forfeiture provisions of the statute.

7. ————: ————: ————: Deducting Unpaid Premiums: Pleading. In an action on a life insurance policy, where default was made in the payment of a premium, but three-fourths of the net value of the policy, computed in accordance with section 7897, Revised Statutes 1899, was sufficient to provide temporary insurance, so as to keep the policy in force up to the time of the death of insured, while, under section 7899, the right was given the insurer to deduct from the amount of the policies the amount of all premiums that had been foreborne at the time of the decease, including the whole premium of the year in which the death occurred, with six per cent interest per annum, compounded, provided such premiums did not exceed the ordinary life premium at the age of issue, with six per cent interest, yet, where defendant made no claim for such premiums in its answer, and the evidence, while it showed they were unpaid, did not show the amount of an ordinary life premium at the age of issue of the policy, nothing could be deducted therefor.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*Nathan Frank, Richard A. Jones* and *Max W. Oliver* for appellant.

Upon non-payment of the premium due on the first policy, April 9, 1908, after the thirty days grace had elapsed and defendant had been advised from its local office at St. Louis of such non-payment, the policy was cancelled in accord with such contract, the loan paid with the cash surrender value, and this also cancelled. This action on the part of the defendant was proper, and no further liability existed against it on the policies for the following reasons: (a) Under the terms of the loan contract executed by insured, the policies became void upon non-payment of premium and defendant was authorized to apply the surrender value thereof to the payment of the loan. The loan agreement was a contract valid under the amendment of 1903, allowing such surrender value to be applied, not only to the payment of indebtedness for past due premiums, but also any other indebtedness due defendant. (b) The loan contract executed by insured fixed the character of collateral to be given for the loan, which was within the contemplation of the parties at the time the insurance policies were executed. It is their act evidencing the construction placed by them on such clause of the policy. Lindner v. Brewery & Ice Co., 131 Mo. App. 680. (c) Though under the decisions it is held that by the act of the Legislature of 1889, it was declared to be against public policy to allow loan agreements to be made by insured which contemplated a taking of the surrender value of the policy for its payment, still inasmuch as at the time the contract was executed, this disability on the part of the insured had been removed, by the Act of 1903, his action then taken constituted a valid and enforceable contract, which it was no longer against public policy to make. Jones App., 57 Pa. St. 367; State ex rel. v. Krahmer, 105 Minn. 422; Shields v. Land Co., 94 Tenn. 123; Bank & Tr. Co. v. Saxon, 123 La. Rep. 243; Burgett v. Merritt, 155 Ind. 143, 148. (d)

Paschedag v. Life Insurance Co.

The insured, having executed and delivered contract securing such loan by such surrender value of the policy, and defendant having acted upon the same and satisfied such loan therefrom, such transaction constituted a valid transfer of such surrender value, and defendant's application thereof to payment of the loan and cancellation of the policy was in accord with the agreement of the parties, and neither the insured nor his personal representatives ought now to be allowed to question the same.

*Kincaly & Kincaly* for respondent.

(1) The policies of insurance involved in this case are Missouri contracts and are subject to, and to be construed under, the laws of this state: Cravens v. Ins. Co., 148 Mo. 599; Horton v. Ins. Co., 151 Mo. 604; Smith v. Ins. Co., 173 Mo. 341; Nichols v. Ins. Co., 176 Mo. 374; Whittaker v. Ins. Co., 133 Mo. App. 664. (2) The premium for extended insurance on these policies is determined by section 7897, R. S. 1899, and not by laws of 1903, p. 208. Burridge v. Ins. Co., 211 Mo. 158; Kamerick v. Castleman, 21 Mo. App. 587. (3) There is in these policies no unconditional provision for a cash surrender value. Smith v. Ins. Co., 173 Mo. 329; Whittaker v. Ins. Co., 133 Mo. App. 664. (4) There was no evidence of any surrender of these policies by the insured. Raymond v. Ins. Co., 86 Mo. App. 391; Burridge v. Ins. Co., 211 Mo. 158. (5) The provisions of the law cannot be whittled away or annulled by provisions in the policy. Cravens v. Ins. Co., 148 Mo. 583; Smith v. Ins. Co., 173 Mo. 329; Burridge v. Ins. Co., 211 Mo. 158.

NORTONI, J.—This is a suit on two policies of life insurance. Plaintiff recovered the amount of the policies and interest less the amount of a certain loan made by defendant thereon together with accrued interest, and defendant prosecutes the appeal.

Plaintiff is the administratrix of her deceased husband, the insured, and defendant is an incorporated life insurance company. The policies in suit were issued and delivered in this state and it is conceded that they are Missouri contracts subject to our non-forfeiture statutes as expounded by the decisions of the Supreme Court of Missouri. The policies are for $1000 each and were issued to plaintiff's husband, Theodore W. Paschedag, and payable to his personal representatives; the one, on April 9, 1901 in consideration of a stipulated annual premium of $29.07, payable in advance each year, and the second on November 6, 1902, in consideration of a stipulated annual premium of $29.57, payable in advance each year. The petition is in two counts, the first of which declares upon the policy first issued, and the second upon the policy issued at the later date. It is averred in the petition that though the insured owned the policies and they were in force at the time of his death both were then in the possession of defendant.

It appears the insured paid the six first premiums promptly each year on the first policy as they fell due; that is to say, he paid the premiums of $29.07 each on April 9, 1901, the date of issue, and on April 9, 1902, 1903, 1904, 1905 and 1906. He likewise paid each premium of $29.57 promptly in cash on the second policy; that is, the first premium on November 6, 1902, and likewise on November 6, 1903, 1904, and 1905. Six complete annual premiums were paid on the first policy and four complete annual premiums on the second policy, when the insured negotiated a loan on both policies June 26, 1907 for the full amount of the cash surrender value of each policy on the next ensuing date for the payment of annual premiums. The non-forfeiture statutes (Secs. 7897, 7898, 7899, and 7900, R. S. 1899), were in force at the time the policies were issued and each of the policies contained a provision for a cash surrender value at least equal to the net single premium for the temporary insurance provided for in sec-

tion 7897. Indeed, it is conceded that each policy contained a provision for a cash surrender value slightly in excess of that required under our statutes in order to exempt a policy from the application of the non-forfeiture laws. Both policies also contained provisions denominated "concessions" as to the amount which the company would lend the insured thereon. It is stipulated in the policy that after three or more full annual premiums are paid, the company will grant the insured a loan thereon not to exceed the amount stated below in column (a) bearing five per cent interest, payable annually in advance, upon receiving satisfactory assignment of the policy as collateral security, provided that premiums have been paid in full for the policy for the year next ensuing the year named in the table as fixing the amount of the loan. According to this table, at the end of six years, the insured was entitled to a loan of $124 on the first policy, for on this six annual premiums had been paid at the time, and this amount is identical with the cash surrender value of the same policy stipulated for at the end of seven years; that is to say, while $124 was the loan value of the first policy after the payment of six annual premiums, the same amount, $124, was the cash surrender value provided therein at the end of the succeeding year. As to the second policy, on which only four premiums had been paid when the loan was negotiated, the loan value provided for therein is $80 at the end of four years, and this is the identical amount which the policy stipulates as a cash surrender value at the end of the fifth year. On June 26, 1907, after having paid six premiums on the first policy and four on the second, insured negotiated a loan with defendant company on the two policies for the amount of $124 on the first and $81 on the second, at five per cent interest, etc., and by written contract of that date pledged the two policies for its repayment at the company's office in New York as thereinafter provided. Among other things, this loan contract provides that

if the insured shall default in the payment of the interest on the loan when due or any subsequent premium on the policies, then, after thirty days' grace shall have expired, the company is authorized to cancel the policies and appropriate the cash surrender value thereof to the payment of the loan without notice to the insured. Though the loan contract does not in express terms provide for a repayment of the loan except "as hereinafter provided," it proceeds throughout as an agreement concerning collateral, and vouchsafes to the insured the right to pay the indebtedness involved in the loan at any time and redeem the policies so pledged. In other words, it appears to be an agreement by which the policies and their cash surrender value are pledged to defendant company for a repayment of the loan if the insured shall default in the payment of interest thereon or in the payment of any subsequent premiums on the policies, but it contains no positive and direct promise on the part of insured in express terms to repay the loan, except in so far as it appoints defendant and authorizes it to appropriate the cash surrender value of the policies to that purpose. But the insured is given an express option therein to repay the loan at any time and take up the policies so pledged. The insured defaulted in the payment of the next annual premium of $29.07 on April 9, 1908, and on June 26 of that year defaulted as well in payment of both the principal of, and interest on, the loan. After thirty days of grace had elapsed with respect to this policy, defendant company marked it cancelled, filed it away among such papers in its office and appropriated the $124 cash surrender value thereon then accrued to the payment of the loan *pro tanto*. Insured likewise defaulted in the payment of the next annual premium falling due on the second policy on November 6, 1906, and on June 26, 1907, defaulted as to the payment of interest and the amount of the loan on that policy. Thereafter, when more than thirty days of grace had expired, defendant

marked the second policy cancelled in accordance with the conditions of the loan contract, deposited it among the files of the company and appropriated the cash surrender value of $80 to the payment of the loan thereon. Another premium on this policy fell due on November 6, 1908, thereafter and was unpaid by insured, who died on November 15, 1908.

The policies were issued in the first instance to the insured, payable to his personal representatives, and plaintiff, his wife, as such, had no vested right therein, but she afterward qualified as his administratrix and prosecutes this suit on the theory that, though the defaults in the premiums occurred as above stated, the insurance nevertheless continued in force under the provision of our non-forfeiture statute, and this, too, notwithstanding the loan negotiated by the insured and the pledge of the policies and the cash surrender value, and subsequent appropriation thereof to the payment of the loan. It seems that though an insured may pledge his policies and the cash surrender value thereof to a third party under a competent contract for a loan, our Supreme Court, by construction of our non-forfeiture statute (sec. 7897), denies the right of the company issuing the policy to consummate a valid contract with the insured to that effect, either when the loan is provided for in the policy in the first instance, as in Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560, or by a subsequent amendment thereto between the insurance company and the insured, as in Smith v. Life Ins. Co., 173 Mo. 329, 72 S. W. 935, if the loan contract involves the right of the insurance company to appropriate the net value of the policy stipulated for in the non-forfeiture statutes which may be applied as a net single premium for the purchase of extended insurance. Though it seems to be a strained construction of the non-forfeiture statutes, which infringes the freedom of contract between parties and inhibits the

right of the insured to negotiate a loan on his policy
as collateral, even years after the contract of insurance
was entered into, on the same terms with the insur-
ance company which would be valid in the circumstances
if made with a third party, such is nevertheless the law
of this state; and plaintiff's cause of action may be sus-
tained if the policies possessed sufficient net value to pur-
chase extended insurance beyond the date of the death of
the insured; for, though the company cancelled the poli-
cies and applied the cash surrender value thereof to the
payment of the loan, it acquired no right to do so, un-
der the decisions referred to, by virtue of the loan con-
tract, if there was a net value otherwise available to
purchase extended insurance, because this contract
found its origin in the policy provision for a loan in the
first instance and such provisions purport to authorize
the company to appropriate the net value of the in-
surance to a purpose other than that contemplated by
the non-forfeiture statutes. It is conceded in this case
the loan made was not granted for or the money em-
ployed for past premium payments on the policies. In
other words, it was a cash loan to the insured, which
was in no manner employed for the payment of prem-
iums to keep the insurance in force. It is conceded, too,
that three-fourths of the net value of each of the policies
at the time of the default in the payment of the first
premiums above referred to, computed upon the actuar-
ies' or combined experience table of mortality, with four
per cent interest per annum thereon, as provided in sec.
7897, R. S. 1899, taken as a net single premium, would
purchase temporary insurance for the amounts written
in each policy for a period of time quite beyond the
date of insured's death, which was November 15, 1908,
and therefore the right of recovery in plaintiff exists
notwithstanding the loan and attempted cancellation
of the policies.

It is argued that as each of the policies contained
a provision for a cash surrender value even greater

than the net single premium for temporary insurance provided for in section 7897, then under the provisions of section 7900, the policies are exempted from the operation of section 7897 on extended insurance, especially in view of the fact that the insured had actually received such cash surrender value. .We believe it to be true that both policies contained a provision for a cash surrender value equal to, if not greater than, that required by section 7897, and it is true enough that section 7900 exempts policies which contain a provision for an unconditional surrender value at least equal to the net single premium for temporary insurance provided for in section 7897 from the influence of that section. But, by the express terms of the statute, such provision for a cash surrender value must be unconditional, so that it will automatically invest the insured with his right to the cash surrender value at the time he defaults in the payment of the premium. The rule of decision in respect of these provisions in the policy which are said to render the prior non-forfeiture sections inapplicable, requires the insurance company to conform the policy provision strictly to the statute. [See Cravens v. Ins. Co., 148 Mo. 583, 50 S. W. 519.] The condition contained in each policy in this case with respect to its cash surrender value is as follows:

The insured is given an option as to "A cash value for the amounts stated below in column (b), upon surrender and satisfactory release of this policy, within six months after the time of default in the payment of any premium, provided there be no unpaid loan through the operation of the first option." The subjoined column referred to therein by the letter (b) indicates a sufficient cash surrender value, it is true, but the provision of the policy quoted is not unconditional in the sense of the statute. It does not operate an automatic conversion of the policy into a cash surrender value which may be had at any time by the insured, for by an express provision therein it limits his

right to the cash surrender value of the policy to his surrendering and executing a satisfactory release of the policy within six months after the time of default. It is entirely clear that the limitation therein quoted to the effect that the cash surrender value should be applied for within six months is a condition on the right of insured to have the cash surrender value of the policy at any time he applies therefor unless its subject-matter becomes barred by the Statute of Limitation. [See Smith v. Mut. Ben. Ins. Co., 173 Mo. 329, 338, 72 S. W. 935.] The right under consideration is further conditioned by the express words of the provision quoted on the fact of there being no unpaid loan on the policy at the time. The provision of the policy relied upon says in substance the cash surrender value is available to the insured, "provided there be no unpaid loan through the operation of the first option." This, too, imposes a condition which the statute forbids. [See Whittaker v. Ins. Co., 133 Mo. App. 664, 114 S. W. 53.]

But this matter as to the form of the provision for a cash surrender of the policy is really beside the case, for the reason such a provision, even if otherwise sufficient, is without influence here, where the question presented relates entirely to a loan on the policy. However, on this feature of the policy an argument is advanced to the effect that such provision in the policies, having been actually carried out by the payment of the full amount of the cash surrender value for the policies under the loan contract and such policies surrendered, the matter should be treated as though the provision for a competent cash surrender value is actually consummate. In other words, it is said the insured actually received the entire amount which he might have had under any theory as the cash surrender value of the policy, and his rights should therefore be determined as though the policy had been surrendered for its cash surrender value and the subject-matter of the provision of the policy with respect thereto is now fully consummated notwith-

standing its form. This argument predicates in part upon the fact that the loan contract contains no express promise on the part of the insured to repay the loan. Because of this, it is said the contract, fairly construed, manifests the intention of both parties to terminate the relation of insurer and insured by the company paying and the insured accepting the cash surrender value for his policy. It is true enough the loan contract does not expressly provide for a repayment of the loan except in so far as it authorizes defendant to appropriate the cash surrender value of the policy to that purpose, but it nevertheless implies an agreement to that effect, for it recites the matter as a loan to bear interest until a definite time and pledges the policies as collateral security therefor. Both parties understood at the time that they were making a loan and nothing appears whereby the intention is manifested to terminate the relation of insurer and insured by defendant paying to the insured the cash surrender value of the policies for their surrender and cancellation. Indeed, the intention that the relation of insurer and insured was to continue and not be thus terminated at the time the transaction took place is obvious, for the insured reserves the right to pay the loan at any time and take up the policies, etc., and besides, it appears from defendant's proof that it notified him to pay the premiums thereafter falling due as though its relation of insurer continued and the policies remained in force notwithstanding it held possession of both. Under such circumstances, it is clear the matter ought not to be determined as a consummate surrender of the policies for their cash value, unless no heed whatever is to be given to the intention of the parties. To consummate the settlement by paying the cash value for the policies involves the idea of assent, of course, to such a transaction on the part of both, and manifests a purpose as well to terminate the relation of insurer and insured which theretofore obtained. It may not be declared, where neither of these elements appear and

the transaction is expressly denominated a loan, that it was a surrender.

At the time both the policies in suit were issued, our non-forfeiture law (sections 7897 to 7900, inclusive, R. S. 1899), were in force and became parcel of the contracts of insurance. As the law then stood, section 7897 authorized insurance companies to deduct from three-fourths of the net value of the policy any notes or other evidences of indebtedness to the company given by the insured on account of past premium payments on the policies. While the law so stood, under the decided cases, it became a part of the contracts of insurance with the company and no other indebtedness than that for past premium payments could be so deducted. [Smith v. Ins. Co., 173 Mo. 329, 72 S. W. 935; Burridge v. Ins. Co., 211 Mo. 158, 109 S. W. 560.] Afterward, in 1903, the statute was so amended as to authorize the company to deduct from three-fourths of such net value any evidence of indebtedness to the company, etc. By this amendment, the limitation upon such indebtedness to the payment of past premiums was eliminated and it seems any indebtedness to the company may be deducted, under the amended statute. But the statute as so amended expressly provides a rule as to policies thereafter issued only. See Laws of Missouri, 1903, p. 208 as amended. The loan involved here was made June 26, 1907, after this amendment, and it is argued the rights of the parties should be determined according to the amended statute, for the reason such amendment manifests the public policy of the state on the question at the time of the loan. Though the proposition that the public policy of the state as thus manifested in the amended statute is entirely sound, it is wholly without influence on the facts here for the rights of the parties are to be determined under the contract of insurance in the first instance. This is the theory of the decided cases on the subject. It is obvious the amendment is not retrospective in its operation under the settled rules

of law, and as the policies in the first instance stipulated for the loan which was afterwards negotiated and made thereunder, the whole matter and the rights of the parties with respect thereto are to be determined under the statutes of 1899 which become parcel of the contract of insurance by virtue of their being the then law of the state. [See Burridge v. Ins. Co., 211 Mo. 158, 109 S. W. 560.] The case last cited is not precisely in point in its facts, though the language of the opinion and the principle portrayed in the decision is controlling here. However, see Christenson v. N. Y. Life Ins. Co., — Mo. —, 134 S. W. 100, for a judgment directly in point by the Springfield Court of Appeals.

It is next argued that, by the loan contract and the surrender of the policies to defendant at the time the loan was made, it appears the insured accepted the proceeds of the loan as an adequate equivalent in his judgment for his rights in the premises and therefore as he was the sole beneficiary (the policy having been payable to his personal representatives) its subject-matter is relieved from the operation of the non-forfeiture provisions of the statutes by virtue of section 7900, which provides, among other things, that the three preceding sections as to non-forfeiture, etc., shall be inapplicable if the policy shall be surrendered to the company "for a consideration adequate in the judgment of a legal holder thereof." But, of course, this involves, too, a transaction where the parties contemplate a cessation of the insurance contract at the time. By the express provision of the statute, the insured may surrender the policy and terminate the relation of insurer and insured for any consideration which in his judgment is adequate therefor, but the consideration must be given by the company for such a surrender and not for some other purpose. The provision of the statute referred to its without influence here for the reason the matter of surrendering the policy in the sense of the statute for an adequate consideration was not in contemplation of

the parties. Indeed, it is clear the parties did not in-
tend to terminate the relation of insurer and insured
by this transaction, for insured reserved the right to
pay the loan and redeem the pledge of the policies, and
defendant proceeded to notify him when the subsequent
payment fell due as though the insurance were still in
force and not then surrendered for such a considera-
tion as was deemed adequate in the judgment of the
insured. See, in this connection, Burridge v. Ins. Co.,
211 Mo. 158, 109 S. W. 560. Where the transaction is
denominated by the parties as a loan and the pledge of
the policies and their dealings touching the matter man-
ifest they did not intend the policy was thereby surren-
dered in the sense of the statute referred to for a con-
sideration adequate in the judgment of the insured, the
court is not justified in saying the transaction was a
surrender. For a case directly in point see Raymond v.
Ins. Co., 86 Mo. App. 391.

The court gave judgment for plaintiff for the
amount of the two policies with six per cent interest
thereon after the institution of the suit, less the amount
of the loan with accrued interest thereon at the rate of
six per cent. It is argued here the court should have
also deducted from the policies the one premium of
$29.07 due April 9, 1908, on which the insured had de-
faulted and the two premiums of $29.57 each on the
second policy, one due November 6, 1907, and one due
November 6, 1908, on both of which the insured had de-
faulted after the date of the loan and prior to his death
on November 15, 1908. This argument is justified by
the express words of section 7899, Revised Statutes 1899,
which authorizes the court, when the death of the in-
sured occurs within the term of the insurance covered
by the net value of the policy, to give judgment for
the insurance notwithstanding the default in premium,
etc. By this section, among other things, it is provided
that the company shall have the right to deduct from
the amount insured in the policy the amount compound-

ed at six per cent interest per annum of all the premiums that had been forborne at the time of the decease, including the whole of the year's premium in which the death occurs. But it is further provided therein that such premiums shall in no case exceed the ordinary life premium for the age of issue with interest as last aforesaid. This statute is parcel of the contract of insurance in this case as well as the others and the rights of the parties ought in justice to be determined accordingly. But it seems defendant omitted to lay any claim to these premiums in its answer and while the proof shows they were unpaid as suggested, there is no evidence in the case as to what an ordinary life premium at the age of issue of the policies is. The policies in suit here are not ordinary life policies, but on the contrary are twenty-payment life policies with an endowment feature annexed. Though the amount of the defaulted premiums amply appears in the proof, we may not reckon with them, for by express mandate of the statute they may and no doubt do exceed the ordinary life premium for policies at the age these were issued. Had the proof been made as to what the ordinary life premium on such policies is, we would order a remittitur from the judgment for the amount of the three premiums as of the ordinary life class at the age of issue accumulated, with interest at six per cent. This we are unable to do, however, on the proof in the case. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.