## MARY C. GILLEN, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

### Springfield·Court of Appeals, December 11, 1913.

1. **LIFE INSURANCE:** Nonforfeiture Statutes: Object. The object of the nonforfeiture statutes relating to life insurance companies and their policies is to provide against the forfeiture of policies for.nonpayment of premiums by specifying that the net value of the policies shall be used in purchasing temporary insurance unless paid up insurance is demanded within a stated time.

2. ———: ———: Control Over Contracts. The provisions of nonforfeiture statutes relating to life insurance policies form a part of every policy issued in this state and in the interpretation and construction of the policy they take precedence over all conflicting provisions.

3. ———: ———: Contracts Contrary to: Void. Sec. 7897, R. S. 1899 provides that a life insurance policy, after payment of three annual premiums shall not be forfeited for default in the payment of the premium; but that extended insurance is to be purchased with a certain per cent of the net reserve value of the policy deducting only indebtedness for past due premiums. The company, after the issue of the.policy, made a loan to the insured, the policy being the pledge therefor, it being agreed in case of default of payment of premiums or interest the reserve net value of the policy should be applied to the payment of the loan. The contract was void being contrary to the provisions of the nonforfeiture statutes.

4. ———: Surrender of Policy: Pledge of Policy for Loan is Not. Sec. 7900, R. S. 1899, provides for a surrender of a life insurance policy to .the company for a consideration adequate in the judgment of the .legal holder. A pledge of a policy by the insured to the company to secure a loan with an agreement that such loan, in case of default of payment of the premium or interest should be paid out of the net value of the policy, was not a surrender of the policy as contemplated by the above statute.

Gillen v. Ins. Co.

5. ———: Nonforfeiture Statutes: Amendments: Not Retroactive. The provisions of Acts 1903. p. 208, amending sec. 7897, R. S. 1899, permitting any indebtedness of the insured to the company to be deducted from the net value of the policy before applying same to purchase of extended insurance do not apply to a policy issued before the amendment, though the indebtedness was made after the amendment.

6. LIFE INSURANCE POLICIES: Pledge of on Loan: Void, Though Obligation is Binding. Though a pledge made by the insured of his life insurance policy to insure the insurance company on a loan made to him was void, yet the personal obligation to pay the indebtedness on the part of the insured remained.

7. ———: Right to Surrender: Settling Personal Indebtedness. Under sec. 7900, R. S. 1899, which provides that the insured may surrender his life insurance policy to the company at any time for a consideration which he deems adequate, after the insured has defaulted in the payments of his premiums, he can surrender his policy to the company in consideration of the payment of his personal debt to the company out of the net value of his policy.

8. Estoppel: Plea of: What Necessary to Sufficiency of. A plea of estoppel, to be sufficient, must plead the facts and elements of an estoppel one of which is that the party invoking the estoppel was prejudiced thereby in some manner.

9. LIFE INSURANCE POLICIES: Surrender of: By Estoppel. An insurance company notified the insured that the proceeds of the net reserve of his policy had been applied to the satisfaction of his personal indebtedness to the company created by a loan. It appearing that the insured was not sufficiently informed of his rights, a failure on his part to answer such notice and protest against such proceedure cannot be taken as an acquiescence amounting to estoppel.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Jones, Hocker, Hawes & Angert* and *J. Lionberger Davis* for appellant.

(1) The question involved in this case is governed by the law announced in the case of Christensen v. New York Life Insurance Company, 160 Mo. App.

486.  (2) The facts in this case are even stronger than
those in the Christensen case, for here the amount of
the loan equaled, if not exceeded, the net value or re-
serve of the policy.  When, therefore, the lien was fore-
closed, and the loan thus satisfied and the indebtedness
canceled, and when the insured and the plaintiff were
notified of the cancellation of the policy and that it
had no further value and they acquiesced therein for a
period of eighteen months until the insured's death,
the conclusion is irresistible that they surrendered the
policy for a consideration (the satisfaction of the debt)
adequate in their judgment, and hence the relation of
insurer and insured was thus brought to an end.

*James J. O'Donohoe* for respondent.

(1)  The policy in suit is a Missouri contract and
to be construed according to the laws of this State in
force when it was issued.  Cravens v. Ins. Co., 148
Mo. 604; Reed v. Painter, 129 Mo. 680; Havens v. Fire
Ins. Co., 123 Mo. 417; State v. Grant, 79 Mo. 122;
Wolff v. Berning, 74 Mo. 96; Brine v. Hartford Ins.
Co., 96 U. S. 858.  (2)  Being a Missouri contract, the
reserve value thereof could not be appropriated to re-
pay the loan.  Sec. 7897, R. S. 1899; Cravens v. Ins.
Co., 148 Mo. 583; Smith v. Ins. Co., 173 Mo. 329; Bur-
ridge v. Ins. Co., 211 Mo. 158; Christensen v. Ins. Co.,
152 Mo. App. 551; Paschedag v. Ins. Co., 155 Mo. App.
185; Christensen v. Ins. Co., 160 Mo. App. 486; Head
v. Ins. Co., 241 Mo. 403.  (3)  Neither the insured nor
beneficiary surrendered the policy and neither ac-
quiesced in the appellant's attempt to apply the re-
serve value of the policy in repayment of the loan.
Moreover, their acquiescence could not operate as an
estoppel.  Head v. Ins. Co., 241 Mo. 403; Paschedag
v. Ins. Co., 155 Mo. App. 185; Christensen v. Ins. Co.,
152 Mo. 551; Burridge v. Ins. Co., 211 Mo. 158; Smith
v. Ins. Co., 173 Mo. 329; Cravens v. Ins. Co., 148 Mo.

583; Raymond v. Ins. Co., 86 Mo. App. 391; Price v. Ins. Co., 48 Mo. App 281. (4) Even in the absence of statute estoppel will not be allowed unless it appears that the party against whom it is invoked was "possessed of full knowledge as to his rights and all of the material facts and circumstances attending the particular transaction in respect of which the doctrine is invoked." Purdy v. Bankers' Life Assn., 101 Mo. App. 109; Head v. Ins. Co., 241 Mo. 403.

STURGIS, J.—The defendant appeals from a judgment recovered in the trial court on a policy of insurance issued by defendant on the life of Frank E. Gillen in favor of his wife, Mary C., the plaintiff herein, as beneficiary. The case was tried on an agreed statement of facts. The policy was issued in August, 1900, for $2000, and is conditioned on the payment of semi-annual premiums of $44.50 each, payable on the 28th days of February and August of each year. These premiums were paid until August 29, 1909, when default was made. In the meantime two loans were made to the assured under the term provided in the policy, but, as the first loan was paid out of the proceeds of the second loan, we are concerned with that one only. This loan was for $500 at five per cent. interest, payable in advance, and was made on April 29, 1909, and the interest then paid in advance to August 28, 1909; so that both the premium and interest on the loan became due on that date and default was made in both. No further premium was paid on the policy nor interest on the loan prior to the death of the assured on May 28, 1911.

The plaintiff's case proceeds on the theory that this policy, being a Missouri contract and governed by the provisions of the non-forfeiture laws of this State in force at the time the policy was issued, being sections 7897, 7898, 7899 and 7900, Revised Statutes 1899, and which are the same as section 6946, before the

amendment in 1903, 6947, 6948 and 6949, Revised Statutes 1909, was not forfeited by default in the payments of premiums but was kept in force until after the death of the insured by automatically applying the net value of the policy available to purchase temporary insurance as a net single premium to that purpose. The defendant claims that such net value of the policy was with the implied consent of the insured used by it in discharging the loan of the insured, valid at least as a personal obligation, thereby surrendering the policy, and that nothing was left with which to purchase temporary insurance. It is conceded by both parties that this case is very similar to that of Christensen v. Insurance Co., 160 Mo. App. 486, 141 S. W. 6, recently decided by the St. Louis Court of Appeals after an opinion, though without authority, had been rendered by this court reported in 152 Mo. App. 551, 134 S. W. 100. As this is the same defendant and the policy, loan agreement, etc., are similar in both cases and the company used the net value of the policy at the time of default, in that case as in this one, to pay off the loan of the assured instead of applying the same to purchase temporary insurance, a reading of that case will assist in understanding both the law and facts of this one and make a more detailed statement unnecessary.

The policy itself provides that cash loans at five per cent. interest can be obtained by the insured on the sole security of the policy after the policy has been in force for two years or more, if the premiums are paid to the anniversary of the insurance next after the date of the loan, in varying amounts as shown by a table of cash loans based on the age of the policy. This is one of the rights of the assured under the policy. The loan agreement signed by the assured and this plaintiff acknowledges the receipt of the money, $500, agrees to pay interest on same in advance, pledges the policy as sole security for the loan and interest and deposits same with the company for that purpose and agrees to

pay the loan when due, with the right to reclaim the policy at any time on repayment of the loan. It further provides that the loan shall become due and payable on maturity of the policy or on default in payment of any of the premiums on the policy or the interest on the loan, in which event the pledge shall be foreclosed without demand or notice by satisfying the loan out of the net value of the policy in the manner provided therein. The provision thus referred to in the policy is to the effect that if any premium or interest is not duly paid and if there is an indebtedness to the company, then paid up insurance will be issued on demand made within six months to such amount as any excess of the reserve over such indebtedness will purchase and ''if no such request for paid-up insurance is made, the net amount that would have been payable as a death claim on the date to which premiums were duly paid will automatically continue as term insurance from such date, for such time as said excess of the reserve will purchase according to the company's present published table of single premiums for term insurance, and no longer.''

The agreed statement of facts further cites: ''In accordance with said loan agreement and policy, the defendant duly foreclosed the lien on said policy on the 26th day of November, 1909, and neither the reserve held by the company on said policy on said date or at the time of its lapse, nor the reserve or net value of the policy on said date, computed upon the Actuary's or Combined Experience Table of Mortality, with interest at four per cent per annum, nor the reserve or net value of the policy computed upon the American Experience Table of Mortality, with three per cent interest per annum, exceeded the sum then due on account of said indebtedness, and interest. Defendant, at the same time, canceled said loan and canceled the indebtedness of the insured and of plaintiff. Thereafter, on November 26, 1909, the defendant wrote and

mailed the following notice: 'New York, November 26/09. Mr. Frank E. Gillen, 3540 a McKean Ave., St. Louis, Mo., Dear Sir: Re Policy No. 307116. By a loan agreement executed on the 29th day of April, 1909, the above policy on the life of Frank E. Gillen was pledged to and deposited with the New York Life Insurance Company as collateral security for a cash loan of $500. The premium and interest due on said policy on the 28th day of August, 1909, not having been paid, the principal of said loan became due and has been settled according to the terms of the policy, and the policy has no further value. Yours Truly, John C. McCall, Second Vice-President. By E. L. H.' Said notice was received by the insured and his beneficiary on or about December 1, 1909, and thereafter no steps were taken by either the insured, the plaintiff or the defendant until this action was begun. If the loan had not been made and if the loan agreement had not been executed, and if the foreclosure had not been made and the notice thereof given and received, said policy would have had sufficient net value to have purchased extended insurance for the full amount of the policy, to-wit, two thousand dollars, for a period beyond the date when the insured died."

It will thus be seen that the whole case turns on the right of the defendant to use the net reserve value of the policy at the time default was made in the payment of premiums or thereafter in paying the loan instead of applying it as a net single premium to purchase temporary insurance for the full amount of the policy as provided by section 7897, Revised Statutes 1899.

The question here presented is by no means a new one and has been before the courts under somewhat varying facts in several recent cases. [Christensen v. Insurance Co., 160 Mo. App. 486, 141 S. W. 6; Christensen v. Insurance Co., 152 Mo. App. 551, 134 S. W. 100; Burridge v. Insurance Co., 211 Mo. 158, 109 S. W.

.560; Smith v. Insurance Co., 173 Mo. 329, 72 S. W.
935; Paschedag v. Insurance Co., 155 Mo. App. 185,
134 S. W. 102.] Most of the collateral questions pre-
sented here have been settled beyond further contro-
versy by the cases above cited and learned counsel have
so conceded in their briefs and arguments in this court.
It is no longer a question that the provisions of the
nonforfeiture statutes enter into and form a part of
every policy of insurance issued in this State by for-
eign as well as domestic companies when authorized
to carry on their business here. These statutory pro-
visions become the supreme law of every policy "any-
thing in the policy to the contrary notwithstanding."
In the interpretation and construction of the policy
contract they dominate and override all conflicting pro-
visions. As to the matters mentioned therein these
statutory provisions deprive the parties of freedom to
contract. The object of these nonforfeiture statutes is
to provide against forfeiture of policies for nonpay-
ment of premiums by specifying that the net value of
the policy shall be used in purchasing temporary in-
surance unless paid-up insurance is demanded within
sixty days. These provisions cannot be contracted
away except in the instance and in the manner pro-
vided by section 7900, Revised Statutes 1899. [Smith
v. Insurance Co., 173 Mo. 329, 340, 72 S. W. 935; Cra-
vens v. Insurance Co., 148 Mo. 583, 50 S. W. 519; Bur-
ridge v. Insurance Co., 211 Mo. 158, 172, 109 S. W.
560.] In Christensen v. Insurance Co., 160 Mo. App.
486, 493, 141 S. W. 6, the court said: "Our Supreme
Court has twice ruled that no portion of the three-
fourths of the net value of the policy may be appro-
priated to any purpose other than the payment for
temporary or extended insurance or the liquidation of
notes for past premiums, as the statute stood at the
time the policy here in suit was issued. [See Smith
v. Mutual Ben. Life Ins. Co., 173 Mo. 329, 72 S. W.
935; Burridge v. New York Life Ins. Co., 211 Mo. 158,

109 S. W. 560.] The theory of those cases goes to the effect that the nonforfeiture statute in force at the time the policy is issued enters into it as a parcel of the contract and operates to prohibit any subsequent change or modification thereof between the parties thereto affecting the application of the net value."

It is also settled that what cannot be done by the original policy contract—"a straight line"—cannot be done by a supplemental or collateral contract, in this case a loan agreement, that is, "cannot be done in a circle." [Burridge v. Insurance Co., 211 Mo. 158, 178, 109 S. W. 560; Head v. Insurance Co., 241 Mo. 403, 408, 147 S. W. 827.]

It is also the settled law that in determining the amount of the net value of the policy applicable to purchasing temporary or extended insurance, the insurance company has no right to demand nor can it compel a deduction of any indebtedness of the insured to the company except "notes given on account of past premium payments on said policy." [Smith v. Insurance Co., 173 Mo. 329, 341, 72 S. W. 935; Burridge v. Insurance Co., 211 Mo. 158, 171, 109 S. W. 560; Paschedag v. Insurance Co., 155 Mo. App. 185, 198, 134 S. W. 102.] It must, therefore, be held that the defendant in this case acquired and had no right or authority either by the original policy or by the supplemental loan agreement, or both combined, to use the net value of the policy in paying off or canceling the loan made by it to the assured. Whether the assured could or did confer this right by consent and agreement after default was made in paying the premiums will be considered later.

The pledging of the policy as security for the loan and the foreclosure of the lien on the same and the application of the proceeds to a payment of the loan, in so far as such acts depend for their validity on any power or authority given by the policy and loan agree-

ment, were a mere nullity. These matters and things did not have for their object and purpose and did not result in "a surrender of the policy to the company for a consideration adequate in the judgment of the legal holder thereof," which is a statutory exception to the application of the preceding nonforfeiture sections of the statute in question. [Section 7900, R. S. 1899.]

It is also conceded, and need only be mentioned, that the amendment of section 7897, Revised Statutes 1899, by Acts of 1903, p. 208, permitting *any* indebtedness of the insured to the company to be deducted from the net value of the policy before applying the same to the purchase of temporary or extended insurance, is not applicable to this policy as it was issued before such amendment, though the loan was made after the amendment. That act is not retroactive. [Paschedag v. Insurance Co., 155 Mo. App. 185, 199, 134 S. W. 102; Christensen v. Insurance Co., 152 Mo. App. 551, 556, 134 S. W. 100; Christensen v. Insurance Co., 160 Mo. App. 495, 141 S. W. 6; Burridge v. Insurance Co., 211 Mo. 158, 173, 109 S. W. 560.]

It is also suggested that the policy and loan agreement in question makes the loan payable solely out of the policy or its proceeds, pledged for its payment as collateral security, and imposes no personal liability on the insured. It is hence argued that, as there was no indebtedness of the assured to the defendant, none could by contract or consent be deducted from the net value of the policy before applying it to the purchase of temporary or extended insurance. We do not so read or interpret the policy and loan contract. The fact that the company mainly relied on the security to collect its money does not relieve the personal liability as such is often the case in making loans with security. The transaction is denominated a loan throughout and bears interest. There is an express promise "to pay said company said sum when due with interest" and

the privilege is given to pay the amount and interest at any time and reclaim the policy. The loan is specified to become due and payable "if any premium on said policy or any interest on said loan is not paid on the date when due," and such date is clearly fixed by the policy. In Christensen v. Insurance Co., 160 Mo. App. 486, 496, 141 S. W. 6, the court, in speaking of a similar loan agreement, said: "The fact that the attempted pledge of a portion of the net reserve available to the purchase of extended insurance was invalid is, of course, without influence as to the indebtedness itself. On December 18, 1905, the insured defaulted in the payment of his premium due on that date and defaulted as well with respect to the payment of interest on his loan. Because of such defaults, the loan became due, for such was the agreement between the parties, and in this respect the agreement was certainly valid, though it contemplated as well a pledge of a portion of the net reserve not authorized by the statute."

In Paschedag v. Insurance Co., 155 Mo. App. 185, 197, 134 S. W. 102, the court, speaking of such an agreement, said: "It is true enough the loan contract does not expressly provide for a repayment of the loan except in so far as it authorizes defendant to appropriate the cash surrender value of the policy to that purpose, but it nevertheless implies an agreement to that effect, for it recites the matter as a loan to bear interest until a definite time and pledges the policies as collateral security therefor. Both parties understood at the time that they were making a loan and nothing appears whereby the intention is manifested to terminate the relation of insurer and insured by defendant paying to the insured the cash surrender value of the policies for their surrender and cancellation."

In Smith v. Insurance Co., 173 Mo. 329, 340, 72 S. W. 935, after holding that the pledge of the net value of a policy to the payment of a similar loan was in-

valid, the court said: "Of course, if the assured should live beyond the period of the temporary insurance, the policy would become extinct and the defendant would have only the personal liability of the estate of the assured to depend on."

In Bank v. Insurance Co., 81 Fed. 935, the court said: "While it may be that in the settlement of an annual premium the portion thereof represented by the certificate of loan does not actually pass back and forth between the insured and the company, yet the transaction in substance is a loan of money. The certificate designates it a 'loan,' the amount bears 'interest,' and it is made a lien on the policy until paid. No doubt the company's main reliance is upon this lien because of its effectiveness, but personal liability is not expressly or necessarily excluded. A loan imports an obligation to pay back. I do not see why an action could not be maintained on the certificate of loan after demand. Debt lies whenever a sum certain is due, without regard to the way in which the obligation was incurred, or by what it is evidenced. [Stockwell v. U. S., 13 Wall. 531.]"

We think, therefore, that the loan transaction and agreement had between the insured and the defendant created a personal obligation on the insured to pay the amount of the loan with interest and, as the pledge of the policy was invalid in so far as it authorized, or rather attempted to empower defendant to compel, the use of the net value of the policy in discharging the loan, such loan was, so far as this case is concerned, nothing but a personal obligation of the insured and plaintiff to the defendant.

For the purpose of this case then, after the assured had defaulted in the payments of his premiums, the situation was this: he had to his credit with the defendant the net value of his policy, computed as specified by section 7897, Revised Statutes 1909, which he had an undoubted right to have used to purchase

temporary or extended insurance, and, unless he consented to use it in some different way permitted by the exceptions to the nonforfeiture statutes, the law itself would apply it to that purpose. On the other hand, he was indebted to the defendant as a personal obligation only in a sum equal to or greater than this net value. In this situation could he contract to surrender his policy and terminate his relations with defendant? We think, as held in Christensen v. Insurance Co., 160 Mo. App. 486, 141 S. W. 6, that, in view of the last clause of section 7900, Revised Statutes 1899, he could. The reason for restricting by our nonforfeiture statutes the right to contract between the insurer and insured is well expressed by Judge VALLIANT in Smith v. Insurance Co., 173 Mo. 329, 341, 72 S. W. 935, as follows: "There is a great deal of technical learning in the subject of life insurance and our lawmakers have proceeded on the theory that the average man who takes out a policy on his life is not equal in skill and learning in the technicality on that subject to the experienced officers of the insurance company, and for that reason have written into such contracts some provisions which the parties to them cannot avoid." The right and power of the insured to contract with reference to the use of the net value of his policy otherwise than in purchasing extended insurance is restricted only and not entirely prohibited. The statute itself contains exceptions and among other things provides that the nonforfeiture provisions shall not apply "if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof." By the terms of this exception the assured may make a contract with the insurer having for its object and purpose and actually resulting in a surrender of the policy to the company and thereby terminating the relations of insurer and insured. The Legislature evidently thought the insured would be capable of making so simple a contract as

surrendering his policy to the insurer for a consideration to be fixed and agreed to by himself. The insured cannot contract in advance, either in the policy or in the application for it or by any supplementary or loan agreement, that he will use the net value of his policy in case of default in payment of premiums for a purpose other than purchasing extended insurance except in the two cases provided for by the same statute where the policy contains a provision for the holder receiving unconditionally the full net value, either in cash or by new paid-up policy. Whenever the surrender of a policy is after or grows out of the default in paying the premiums, the consideration for the surrender must be fixed and agreed to after such default. The hands of the insured must be left untied until he is ready to and does actually surrender the policy to the company.

In speaking of the exceptions to our statute now under consideration, the Supreme Court of the United State in Equitable Life Society v. Clements, 140 U. S. l. c. 233, which case has been the foundation of most of our state decisions, said: ''In defining each of these two cases, the statute, while allowing the holder to make a new bargain with the company, at the time of surrendering the policy, and upon such terms as, on the facts then appearing, are satisfactory to him, yet significantly, and, it must be presumed, designedly, contains nothing having the least tendency to show an intention on the part of the Legislature that the company might require the assured to agree in advance that he would at any future time surrender the policy or lose the benefit thereof, upon any terms but those prescribed in the statute.''

In Smith v. Insurance Co., 173 Mo. 329, 342, 72 S. W. 935, the court said: ''True the plaintiffs' husband did obtain that amount of money from the company, but not after default in the payment of the premium, not after the provisions of the statute under discussion took effect, not as in payment to him of the

cash surrender value of the policy, but he obtained it as a loan for which he executed his note and gave collateral security and for which his estate is liable to the defendant, and for which also the defendant holds the policy in suit as security." And in Burridge v. Insurance Co., 211 Mo. 158, 178-9, 109 S. W. 560, the Supreme Court rejected the defense of the insurer because the insured was insane and could not contract or agree as to a surrender of the policy or a consideration therefor at the time of the alleged actual surrender of the policy, though he had tried to do so by contract in advance, and because no consideration was shown to have been accepted at the time of the surrender. But the court also said: "That section plainly contemplates that the relation of insurer and insured may be brought to an end if the insurer complies with its provisions, and the policy is surrendered 'for a consideration adequate in the judgment of the holder.' "

In Paschedag v. Insurance Co., 155 Mo. App. 185, 199, 134 S. W. 102, the court gives the reasons why a loan contract providing for a surrender of a policy in case of default in paying interest and premiums does not fall within the exceptions to the statute providing for a surrender of the policy "for a consideration adequate in the judgment of the legal holder thereof," in these words: "But, of course, this involves, too, a transaction where the parties contemplate a cessation of the insurance contract at the time. By the express provision of the statute, the insured may surrender the policy and terminate the relation of insurer and insured for any consideration which in his judgment is adequate therefor, but the consideration must be given by the company for such a surrender and not for some other purpose. . . . Where the transaction is denominated by the parties as a loan and the pledge of the policies and their dealings touching the matter manifest they did not intend the policy was thereby surrendered in the sense of the statute referred to for

a consideration adequate in the judgment of the insured, the court is not justified in saying the transaction was a surrender. [For a case directly in point, see Raymond v. Ins. Co., 86 Mo. App. 391.]''

We, therefore, hold, that, while plaintiff did not and could not by the policy or loan agreement make a valid contract compelling him to surrender his policy in case of default in payment of premiums and interest and apply the net value of the policy or any part thereof in payment of such loan, yet, he could after such default voluntarily agree to and actually surrender his policy to the company in consideration of the payment of his personal debt to the company out of the net value of his policy.

Viewing this case as we must from the standpoint that the assured's pledge of his policy to the payment of his loan was void, that such loan was a personal debt only, that after his default in payment of the premium and interest he was perfectly free to refuse or give assent to the use of the net value of the policy to the payment of his indebtedness to the company instead of applying it to the purchase of temporary insurance—a proposition, which, if accepted, would result in a surrender of his policy for a consideration adequate in his judgment—the sole question remaining is to determine whether he did assent to this settlement and surrendered his policy. We will concede that he might assent to this arrangement either directly or by way of estoppel. It must be granted, however, that the defendant had no right to impose on the insured any such settlement and it will be seen that when it wrote to him in effect that it had foreclosed the loan and applied the net value of the policy to the payment of the loan, thus cancelling both the policy and his personal indebtedness to it, the letter in no wise suggested that he had any right to object and decline any such settlement. This letter was not designed to give the insured any freedom to contract

with reference to this matter. It gave no figures or amounts and no information as to the method of computation used or how it arrived at the result that the policy is of no value. It is based on the assumption by the defendant that the loan agreement and pledge of the policy gave the defendant company the absolute right to apply the net value of the policy in payment of the loan and that it had exercised this right and, therefore, the "policy has no further value." The letter does not call for any choice or answer and the only thing suggested that the insured could do is to have protested against this arbitrary action of the company. The contention of the defendant is that the failure of the insured to so protest works an estoppel by acquiescence equivalent to a voluntary agreement that the policy be surrendered in consideration of the cancellation of the loan indebtedness. It must, however, be borne in mind that the insured was under no obligation to make any choice or request in order to obtain the extended insurance. The law gave him this benefit unless he voluntarily chose and assented to the other alternative of at that time surrendering the policy for a consideration adequate in his judgment.

In thus charging against the insured a duty to protest against the company's action in this respect defendant imputes to him and the beneficiary a better knowledge of their rights under the policy than was possessed by the company. We will accord to the company an honesty of purpose and that it honestly believed the loan agreement and pledge of the policy gave it a right to thus cancel the policy, although, as we have seen, it was mistaken in this. As said in Smith v. Insurance Co., supra, the insured is not presumed to have the technical knowledge in reference to life insurance contracts possessed by the experienced officers of such companies; and, if they did not know the rights of the respective parties under this policy contract, how can the insured be charged with suffi-

cient knowledge of his rights thereunder on which to base a protest? Logic and common sense demand that before there is a duty to protest against any action of another the party protesting must have sufficient knowledge of his rights to justify such protest and which suggests to him his duty to make protest. "Waiver is always a question of intention and rests upon a full knowledge of all the material facts upon the part of the person against whom the defense is interposed. In the case at bar there is no evidence that the present beneficiary had any knowledge or information whatever of her rights under the contract in suit as fixed by the statutes and laws of Missouri; and, hence, there is no evidence that she should have intended to abandon the enforcement of such rights." [Head v. Insurance Co., 241 Mo. 403, 419, 147 S. W. 832; Burke v. Adams, 80 Mo. 504, 514; Tennent v. Insurance Co., 133 Mo. App. 345, 362, 112 S. W. 754.] Nor were there any sufficient facts pleaded to constitute an estoppel. A plea of estoppel to be sufficient must plead the facts and elements of an estoppel, one of which is that the party invoking the estoppel was in some manner prejudiced thereby—that he was induced to do or refrain from doing something to his injury. Whatever may be the facts, the defendant did not plead that it refrained from collecting the personal obligation arising from the loan agreement because of its reliance on such debt being fully paid by the application of the net value of the policy to such purpose. [Miller v. Anderson, 19 Mo. App. 71, and cases cited. Osburn v. Court of Honor, 152 Mo. App. 652, 661, 133 S. W. 87; Northrup v. Colter, 150 Mo. App. 639, 649, 131 S. W. 364.]

In the Head case, supra, as in this one, the insurance company undertook to enforce its supposed right under a similar loan agreement to apply the net value of the policy at the time of default in payment of premiums to the payment of the loan and gave the

insured and beneficiary written notice of its action to that effect. The facts there show that the insured and beneficiary received and retained this notice without any response or objection for nearly a year and until the insured's death. Then, for the first time, the alleged settlement was repudiated by bringing suit on the policy on the theory that the policy was kept in force by applying the net value to the purchase of temporary insurance alone. There was a small net-value surplus left after paying the amount of the loan, which was applied to purchase a paid-up policy amounting to eighty-nine dollars and an endorsement to this effect was made on the policy and same returned to and retained by the insured along with the statement as to the use of the greater portion of the net value in paying the loan. The insurance company offered to pay and tendered the amount due as a paid-up policy. Responding to the question of waiver or estoppel under these facts, the court, in addition to what is above quoted, held: "Neither can it be urged that the eighty-nine dollars tendered to plaintiff before and by this suit as the full amount of a paid-up policy under the New York law, and the fact that the policy was returned to her with that endorsement and retained for some months until after the death of her father, be held to operate as a waiver of any rights to which she was otherwise entitled."

On the point now being discussed the Head case, supra, seems to be in direct conflict with the case of Christensen v. Insurance Co., 160 Mo. App. 486, 141 S. W. 6, "the facts of the two cases being so near alike as to warrant no distinction in principle. The decision in the Head case was rendered shortly after the decision in the Christensen case and makes no mention of it. The only difference pointed out between the present case and the Christensen case is that in the Christensen case the whole net value of the policy was not used in paying the loan, and, therefore, the policy was

returned and retained by the insured in that case with an endorsement on that policy as to how the net value had been applied; while in this case, the whole of the net value being so used, there was no need to return the policy and the notice as to the company's action in the matter was given by letter. The Christensen case, however, does not differ from the Head case, supra, even in that respect. In such case, however, a written notice in some form was sent to the insured notifying him as to what had been done in the way of applying the net value of the policy to a cancellation of the loan and the effect thereof on the policy. It is the acquies-' cence of the insured after full notice as to what had been done that constitutes the estoppel in either case and it does not matter whether the notice comes from an endorsement on the policy or in a letter to the insured.

This court, of course, is bound by the Head case, supra, as being the last decision of the Supreme Court. We have, however, sufficiently indicated our own views on the matter. It is conceded in this case, as in the Head and Christensen cases, that there was no direct or express assent or agreement to a surrender of the policy for a consideration adequate in the judgment of the insured and we hold, as did the Supreme Court, that the facts here are not sufficient to show that such result was accomplished by acquiescence amounting to an estoppel.

The judgment will, therefore, be affirmed. *Robertson, P. J.,* concurs. *Farrington, J.,* concurs.