ROSE E. CHRISTENSEN, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, November 7, 1911.

1. **LIFE INSURANCE: Non-payment of Premiums: Policies Automatically Non-forfeitable: Deducting Indebtedness: Law Governing Right.** Section 7897, Revised Statutes 1899, provides that, in determining the term life insurance policies shall be in force, after default in the payment of premiums after three annual premiums have been paid, the amount of any evidence of indebtedness for past premiums shall be deducted from three-fourths of the net value of the policy, and the balance shall be taken as a single net premium for temporary insurance for the full amount of the policy. This statute was amended in 1903 (Laws 1903, p. 208) so as to provide for the deduction of the amount of any indebtedness whatever owing the insurer, from three-fourths of such net value, but the

amended act provides that it shall apply to policies thereafter issued only. A policy issued before the enactment of the amendment of 1903 was pledged, two years after such enactment, to the insurer as security for a loan made at that time, for a purpose other than the payment of premiums. The policy provided that such a loan might be made, and it and the loan contract provided that the loan, if not repaid, should be satisfied out of the net reserve standing to the credit of the policy. Insured made default, both in the payment of premiums and interest on the loan. In an action on the policy, after the death of insured, *held* that the Act of 1903 did not apply to the policy, but that section 7897, Revised Statutes 1899, which was in force at the time the policy was issued, became parcel of and governed it, and that no portion of the net reserve could, either by change of the law or agreement of the parties, be appropriated to any other purpose than the liquidation of indebtedness for past premiums or payment for extended insurance, as provided by the statute, and hence the loan, not having been made for the purpose of paying past premiums, could not be deducted from three-fourths of the net value of the policy, in determining whether or not it was in force, under section 7897, at the time of the death of insured.

2. ————: ————: ————: **Vested Right.** The right to have the net value of a life insurance policy applied precisely as contemplated by the non-forfeiture statute in force at the time the policy was issued is one which cannot be waived, contracted away or affected by any subsequent amendment to or change in the law.

3. ————: ————: ————: **Terminating Contract of Insurance: Estoppel.** While the ordinary rules of estoppel are not to be applied to rights relating to the non-forfeiture of life insurance policies, granted by section 7897, Revised Statutes 1899, such rules do apply to rights arising under section 7900, Revised Statutes 1899 (Section 6949, Revised Statutes 1909), which authorizes an express agreement between insurer and insured for terminating the contract of insurance.

4. ————: ————: ————: **Validity of Loan on Policy.** Where a life insurance company loaned an insured person a sum of money, taking a pledge of the policy as collateral security, the fact that the attempted pledge of a portion of the net reserve of the policy available for the purchase of extended insurance was invalid, under section 7897, Revised Statutes 1899, would not render the indebtedness invalid.

5. **EVIDENCE: Presumptions: Delivery of Mail.** Documents transmitted to a person by mail and found among his papers after his death are presumed to have reached him in the usual course of mail.

6. **LIFE INSURANCE: Non-payment of Premiums: Non-forfeiture Law: Surrendering Policy: What Constitutes Surrender.** Section 7900, Revised Statutes 1909, which provides that the three preceding sections, relating to the non-forfeiture of life insurance policies, shall not apply to a policy which is surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, contemplates that the relation of insurer and insured may be brought to an end, if the insurer complies with its provisions and the policy is surrendered "for a consideration adequate in the judgment of the holder," but it is not necessary, in order to make the three preceding sections inapplicable, that the relation of insurer and insured be terminated so that it cannot be renewed under a new contract which is part of the same transaction; and hence, where a loan made by a life insurance company to an insured was deducted from the net value of the policy, upon insured's defaulting in the payment of a premium, after three annual premiums had been paid, in pursuance of an agreement between the parties but contrary to the non-forfeiture law in force at the time the policy was issued (Section 7897, Revised Statutes 1899), and the policy, for a reduced amount, was continued in force for a certain period and was accepted by insured, the transaction was a surrender of the policy to the company "for a consideration adequate in the judgment of the legal holder," within section 7900, and section 7897 was thereby rendered inapplicable to the policy.

7. ———: ———: ———: ———: ———: **Estoppel.** Where an insured, having paid three premiums on a life insurance policy, after default in the payment of further premiums and interest on a loan secured by a pledge of the policy, received a letter from the insurer stating that it had paid the indebtedness out of the net reserve standing to the credit of the policy (which course was in accordance with the provisions of the loan agreement but contrary to the provisions of the governing statute, Section 7897, Revised Statutes 1899), and that the policy, for a reduced amount, was continued in force for a certain period, and the policy, with an endorsement to that effect, was enclosed, insured by making no objection to this settlement of his indebtedness nor to the modification of the insurance contract and by enjoying the fruits of it until his death, should be treated as having acquiesced in it.

8. ———: ———: ———: ———: ———: ———: **Facts Stated.** A life insurance policy for $1,000 was issued to insured in 1901, and, four annual premiums having been paid, he obtained a loan of $133 in March, 1905, pledging the policy as collateral security. No further payment of premiums or in-

terest on the loan having been made, the company foreclosed its lien, in accordance with the terms of the policy and loan agreement, but contrary to the non-forfeiture law in force at the time the policy was issued (Section 7897, Revised Statutes 1899), by deducting the amount due on the loan and premiums in default from three-fourths of the net value of the policy, and then with the balance issued extended insurance for $867, to expire January 18, 1907. A letter from the insurer to the insured, dated June 18, 1906, advising him what had been done, together with the policy, endorsed so as to effect the change above stated, were found among his papers after his death, which occurred on June 8, 1907. In an action by the administator of insured, *held*, that insured had surrendered his policy to insurer for a consideration adequate in his judgment, and hence, under the provisions of section 7900, Revised Statutes 1899, section 7897, providing for extended insurance, had no application.

9. **INSURANCE: Presumptions: Knowledge of Policy Provisions.** An insured is conclusively presumed to know the recitals in an insurance contract, which he accepts and retains for a long period without complaint.

10. **LIFE INSURANCE: Policy Payable to Personal Representatives: Rights of Insured: Rights of Wife.** Where a life insurance policy is payable to the personal representatives of the insured and he alone controls it, he may surrender or cancel it at any time, without regard to the wishes of his wife; distinguishing Tennant v. Ins. Co., 133 Mo. App. 345.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

REVERSED.

*Judson* and *Green* for appellant.

*James J. O'Donohue* for respondent.

NORTONI, J.—The appeal in this case was prosecuted to this court, but it was transferred to the Springfield Court of Appeals under the provisions of an act of the Legislature, approved June 12; 1909. [See Laws of Missouri 1909, p. 396; see also Sec. 3939, R. S. 1909.] Afterwards, the Springfield Court of Appeals disposed of the case in an opinion prepared by

Judge Cox of that court, which may be found reported under the title of Christensen v. Life Ins. Co., 152 Mo. App. 551, 134 S. W. 100. Subsequently, the Supreme Court declared the legislative act, which purported to authorize the transfer of cases from one Court of Appeals to another for hearing and determination, to be unconstitutional, as will appear by reference to the cases of State ex rel. Dunham v. Nixon, 232 Mo. 98, 133 S. W. 336; State ex rel. Dressed Beef, etc. Co. v. Nixon, 232 Mo. 496, 134 S. W. 538; State ex rel. O'Malley v. Nixon, 233 Mo. 345, 138 S. W. 342. Because of such ruling of the Supreme Court, the case was thereafter transferred by the Springfield Court of Appeals to this court, on the theory that the jurisdiction of the appeal continued to reside here and the proceedings had in the Springfield Court with reference thereto were *coram non judice.*

The case has been argued and submitted here and duly considered. On examination of the several arguments advanced for a reversal of the judgment, we are prepared to concur in part with the views expressed by the Springfield Court, but not *in toto.* Nor do we concur in the conclusion of that court on the facts in judgment, in view of the statute, Sec. 7900, R. S. 1899 (see also Sec. 6949, R. S. 1909), which seems not to have been considered by the Springfield Court.

The suit is upon a policy of life insurance issued by defendant to plaintiff's husband. Plaintiff recovered a judgment of $741.60, after deducting a certain loan and unpaid premiums, and defendant prosecutes the appeal. The policy sued upon was issued December 21, 1901, to Anton Christensen, the husband of plaintiff, in the amount of $1000, and by its terms it was payable to the personal representatives of the insured. His widow, plaintiff, having qualified as administratrix, prosecutes the suit thereon, in her representative capacity, for $1000, the amount of the policy, less the amount of a loan procured by insured from

defendant. The theory of the case is, that at the time of insured's death, the net value of the policy available to purchase temporary insurance was sufficient to, and did, through its automatic application as a net single premium, extend the insurance for a considerable time beyond the insured's death, and this, too, notwithstanding the fact insured had agreed that the amount of his loan might first be deducted from such net value, which agreement, if valid, wholly defeats plaintiff's right of recovery.

By the terms of the policy, the premium of $52.20 was to be paid annually upon the 18th day of December. Such premiums were duly paid on December 18, 1901, December 18, 1902, December 18, 1903, and December 18, 1904—in all four annual premiums. On March 7, 1905, the insured procured a loan, under the terms of the policy, from defendant for the sum of $133 and pledged the policy to defendant as collateral security therefor. The premium falling due December 18, 1905 and the interest on the loan due at that time were not paid, and no subsequent payment was made on either the premium of the policy or interest on the loan, nor was the loan repaid to defendant by the insured, except through a foreclosure and acquiescence to be hereinafter mentioned. By the terms of the loan contract, it was provided that if any premium on the policy or interest on the loan was not paid when such premium or interest was due, the loan might be foreclosed by satisfying the same in the manner provided in the policy. The policy and loan contract provide for the satisfaction of the loan out of the net reserve standing to the credit of the policy, which might be otherwise utilized as a net single premium for the purpose of purchasing temporary or extended insurance. On June 11, 1906, defendant, proceeding under the terms of the policy and loan contract, foreclosed the loan and, in accordance with the terms of such contract, returned the policy to the insured by a

letter on June 18 with an indorsement thereon
that extended insurance to the amount of $867 was
granted to him to expire on January 18, 1907. No
demand was made by the insured for a paid-up policy
by written request or otherwise after the date of de-
fault at any time. The insured departed this life in
the city of St. Louis, intestate, on or about the 8th
day of June, 1907, and the policy containing the in-
dorsement above referred to as to extended insurance
expiring on January 18 of that year was found among
his papers after his death. There is no controversy
about the facts of the case. Indeed, all that are ma-
terial to a determination of the controversy appear
in an agreed statement of facts. It is agreed, too, that
if three-fourths of the net value computed upon the ac-
tuaries' or combined experience table of mortality
with four per cent per annum is available, notwith-
standing the loan involved here, for the purpose of
purchasing extended insurance, then the original pol-
icy of $1000 was continued in force long subsequent to
the date of the death of the insured. On the other
hand, it is agreed that if the amount of the loan of $133
was properly deducted from the net reserve, the
amount of the net reserve remaining for the purpose
of purchasing extended insurance was not sufficient
to extend the policy to the time of the death of the
insured.

At the time the policy was issued, Sec. 7897, R. S.
1899 was in force, and under this statute only notes or
evidence of indebtedness to the company given on ac-
count of past premium payments on the policy issued
to the insured might be deducted from three-fourths
of the net value of the policy. But the case proceeds
here as though this was a cash loan at large for a pur-
pose other than the payment of past premiums, and,
as the loan was made on March 7, 1905, it is argued
that it was competent for the insurance company to
deduct its amount from that portion of the net reserve

available as a net single premium for the purpose of purchasing extended insurance, because the statute was amended so as to authorize such course in 1903, or about two years before the loan was negotiated on the security of the policy. It is true Sec. 7897, R. S. 1899 was amended in 1903, as will appear by reference to Laws of Missouri 1903, p. 208, and, as so amended, now appears as Sec. 6946, R. S. 1909. The amendment of 1903 authorizes deducting from three-fourths of the net value of the policy, not only notes given on account of past premium payments on the policy, but "any evidence of indebtedness to the company" as well, and provides, too, that the balance of such net value shall be taken after such deduction as a net single premium for temporary insurance for the full amount written in the policy, etc. However, by the terms of the amended statute itself, as it appears in the Laws of Missouri 1903, p. 208, it only purports to apply to "policies of insurance on life *hereafter issued*," and that it is not retrospective in its operation has been expressly decided in Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560. But it is argued, notwithstanding this, that as this loan was made in 1905, the amendment clearly authorizes the pledge of the net reserve of the policy as security therefor. Such a loan as this is stipulated for and contemplated in the policy, which was issued December 21, 1901, before the statute was amended; so we see the contract of insurance as originally entered into contemplated, if the parties so chose, an appropriation of a portion of the net reserve to a purpose other than that allowable under the statute (Sec. 7897, R. S. 1899). Our Supreme Court has twice ruled that no portion of the three-fourths of the net value of the policy may be appropriated to any purpose other than the payment for temporary or extended insurance or the liquidation of notes for past premiums, as the statute stood at the time the policy here in suit was issued.

[See Smith v. Mutual Ben. Life Ins. Co., 173 Mo. 329, 72 S. W. 935; Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560.] The theory of those cases goes to the effect that the non-forfeiture statute in force at the time the policy is issued enters into it as a parcel of the contract and operates to prohibit any subsequent change or modification thereof. between the parties thereto affecting the application of the net value. Especially is this the rule of the Smith case, for there the contract of insurance was attempted to be modified subsequently to its issue by pledging the net value to another purpose, and the Supreme Court repudiated the attempt as unavailing. It is true that the loan involved in neither the Smith nor the Burridge case was negotiated after the amendment of 1903; but, be this as it may, the rule of those cases undoubtedly is, that the right to have the next reserve applied precisely as contemplated by the statute at the time the policy is issued is one which may not be waived nor contracted away, as between the insured and the insurer. This being true, it seems clear enough that the Legislature may not come in by a subsequent amendment and change the contract rights of the parties. Such is the principle we deduce from the case of Burridge v. New York Life Ins. Co., 211 Mo. 158, 109 S. W. 560, and the Springfield Court of Appeals in this identical case took the same view, as will appear by reference to Christensen v. Ins. Co., 152 Mo. App. 551, 134 S. W. 100. During the last term, we declared the same in Paschedag v. Met. Life Ins. Co., 155 Mo. App. 185, 134 S. W. 102, but in view of the earnest arguments assailing that judgment, we have examined the matter a second time without ascertaining any reason to recede from the position there taken. In this view, we agree with the Springfield Court of Appeals, to the effect that, though the loan contract was made subsequent to the amendment of 1903, it conferred no

authority on defendant to appropriate a portion of the net value of the policy in payment of the loan, for by the statute (Sec. 7897, R. S. 1899), in force at the time the policy was issued, which became parcel of the policy, it was unlawful to thus appropriate a portion of the net reserve to a purpose other than that contemplated by such statute.

It therefore appears that, according to the agreed statement of facts, the net value of the policy was sufficient to continue it in force for the full amount insured in the first instance beyond the death of the insured, and plaintiff should recover, unless her right to do so is precluded by the act of the insured in retaining the modified policy after the loan was foreclosed and it was forwarded to him by the company. As to that matter, we agree with the view of the Springfield Court of Appeals that the ordinary rule of estoppel is not to be applied to a case falling within the non-forfeiture statute, for if, under the statute, the rights of the parties could not be changed by express contract, that result should not be attained by the application of the doctrine of estoppel, through a mere acquiescence. But though such be the rule when considering section 7897, or the non-forfeiture statute, alone, it may not be the same under the provisions of Sec. 7900, R. S. 1899 (see same statute, Sec. 6949, R. S. 1909); for beyond doubt this statute in plain terms authorizes an express agreement between the parties, to the end of terminating the relation of insured and insurer. We believe the Springfield Court of Appeals omitted to consider this statute in connection with defendant's argument pertaining to an estoppel on the part of the insured, as, by the language employed in its opinion, it would seem that the court understood it was not competent for the parties to discontinue the relation of insurer and insured under the original policy, even by an express contract modifying its terms and amount for a valuable consideration. It seems

entirely clear to us that such a course is authorized by the broad language of Sec. 7900, R. S. 1899 (Sec. 6949, R. S. 1909), for it is provided there that the non-forfeiture statute shall not apply in those cases where the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder of the policy.

To the end of properly disposing of this question, let us view the facts precisely as they are and consider the purpose of the broad language of the statute referred to. Defendant company had loaned the insured $133 and on account of this transaction no one can doubt that a valid indebtedness existed from him to it for that amount. The fact that the attempted pledge of a portion of the net reserve available to the purchase of extended insurance was invalid is, of course, without influence as to the indebtedness itself. On December 18, 1905, the insured defaulted in the payment of his premium due on that date and defaulted as well with respect to the payment of interest on his loan. Because of such defaults, the loan became due, for such was the agreement between the parties, and in this respect the agreement was certainly valid, though it contemplated as well a pledge of a portion of the net reserve not authorized by the statute. After the insured had continued in default for a considerable time without giving heed to notices with respect to the payments due, the company proceeded to foreclose its loan on the 11th day of June, 1906, and appropriated a sufficient amount of the net reserve to pay the amount of the loan and interest accrued. Of course, this appropriation of the net reserve to that purpose was unauthorized under the view heretofore expressed, and, if this were the whole case, we would not deny plaintiff's right of recovery. After the matter of the foreclosure had passed through the several divisions of defendant's home office and was recorded in its books, it mailed the policy to the insured on June 18,

1906, with an indorsement thereon to the effect that the policy was reduced in amount to $867 and continued in force for a term only of one year and one month, from December 18, 1905 to January 18, 1907. This indorsement was signed by the president, secretary and registrar of defendant company. It recited, too, that such course was taken by the company in accordance with the loan agreement executed by .the insured to it on the 7th day of March, 1905, and on account of his default in the payment on December 18, 1905 of the premium and loan interest due on the same day. Under the same cover, defendant inclosed insured a letter, stating the account between them and informing him of the foreclosure of the loan on the net reserve which he had attempted to pledge to it, calling his attention to the default in payment of premium and interest on the loan on December 18, 1905, and reciting as well that the said indebtedness had been paid out of the net reserve; furthermore, that, in accordance with the terms of the agreement, the policy was returned to plaintiff with the indorsement thereon continuing the insurance for one year and one month as above suggested. The policy, containing such indorsement, and these papers were found among the papers of insured after his death, which occurred on the 8th day of June, 1907. It appears the insured lived one year, less eight days, after this policy and the statement of the account, together with defendant's letter concerning the same, were transmitted to him by mail, properly addressed, etc. That he received such papers in due course is presumed in view of what the record discloses, for nothing whatever suggests a thought to the contrary. They were found among his papers after his death and obviously they reached him in the usual course of mail theretofore. Insured made no objection whatever to this settle-

ment of his indebtedness nor to the modification of the insurance policy and, therefore, should be treated as having acquiesced therein; for, however invalid the pledge may have been, he enjoyed the benefit of the cancellation of his indebtedness for nearly a year before he died. Such indebtedness was a valid and subsisting claim in favor of the insurance company, which might have been enforced at law before its payment, even though the pledge of the net value was an invalid one; and no one can doubt that, had the insurance company thereafter sued the decedent, to the end of recovering such indebtedness, he could have successfully pleaded in bar its payment through the transaction above detailed. We say this in view of the provisions of the statute (Sec. 7900, R. S. 1899; Sec. 6949, R. S. 1909). That statute provides that the three preceding sections, which are known as the non-forfeiture insurance statutes, shall not be applicable in certain cases which it enumerates. After minutely specifying several instances to which the non-forfeiture statutes shall not be applicable, its provisions conclude with a broad and general one to the effect that those statutes shall not be applicable ''if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof.'' It is true the Supreme Court remarked, in Burridge v. Ins. Co., 211 Mo. 158, 178, 179, 109 S. W. 560, that Sec. 7900 ''plainly contemplates that the relation of insurer and insured may be brought to an end if the insurer complies with its provisions, and the policy is surrendered 'for a consideration adequate in the judgment of the holder.' '' We believe such to be a proper interpretation of this provision of the statute and have so declared heretofore. [Paschedag v. Met. Ins. Co., 155 Mo. App. 185, 134 S. W. 102.] But we do not understand that the relation of insurer and insured is to be terminated so that it may not be renewed under a new contract which is part of the same transaction. It

is true enough in this instance the relation of the parties as insurer and insured was not finally terminated by this transaction as to the whole amount, for the policy was reduced in amount to $867 and continued in force for only one year and one day, when it might otherwise have continued for several years longer. But be this as it may, by the acceptance of such modified policy the original policy for $1000, which would continue in force several years in advance, was certainly surrendered so that the relation of insurer and insured was terminated thereunder. The broad and sweeping language of section 7900 above quoted confers the power of contract upon the parties with respect to policies which otherwise would fall within the non-forfeiture statutes, and authorizes the insured to surrender his policy to the company for any consideration which in his judgment is adequate. In according usual force and vitality to such language, we are not permitted to say that by an express contract the insured might not surrender the purchasing power of his net reserve for the cancellation of an outstanding debt against himself or his estate after his death and accept in lieu of his original policy a new one for a lesser amount and a shorter period of time. To so declare would impair and annihilate the obvious freedom of contract touching a matter which the language of the statute clearly implies shall be enjoyed by the parties in its fullest measure; for it provides that the insured may surrender his policy for *"any consideration"* which in his judgment is adequate. Had the insured and defendant made an express contract on June 18, 1906 or a few days thereafter, whereby he surrendered his policy to defendant in consideration of its cancelling his indebtedness of $133 and interest and had it issued to him a new policy of $867 for one year and one day, we believe that no one would doubt the validity of such an arrangement under the provisions of the statute above referred to, nor that it would operate

to remove the matter thereafter from within the influence of the non-forfeiture statutes. If such were the power of the parties through an express contract under this statute, then it must be so treated here in the circumstances of the case through an application of the principle pertaining to an acquiescence by silence which inheres in the doctrine of estoppel. It seems that the plainest principles of natural justice would suggest such a result, for it appears the insured enjoyed the fruits of the settlement for a whole year, lacking but eight or ten days, prior to his death, in that his debt was canceled, and he enjoyed the new insurance contract contained in the modified policy for the time it continued, without objection. That such was an abundant consideration goes without saying, if it were regarded to be an adequate one in the judgment of the insured. That he so regarded it is not to be questioned, in view of the fact that he held the policy and enjoyed the cancellation of his debt for nearly a year before his death, and this, too, without any word of dissent whatever. It cannot be said that he was without full knowledge of all the facts, for the proof is conclusive to the contrary. Especially is this true in view of the accepted rule of decision that one is conclusively presumed to know the recitals in an insurance contract which he accepts and retains in his possession for a long period of time without complaint. [See New York Life Ins. Co. v. Fletcher, 117 U. S. 519.] Here plaintiff, wife of the insured, had no interest whatever in the insurance policy at the time of its surrender, for the policy was payable to the personal representatives of the insured and he alone controlled it during his life. He might surrender or cancel it as he chose at any time without regard to the wishes of his wife, who sues here in her representative capacity as his administratrix. In this respect the case is to be distinguished from Tennent v. Union Cent. Life Ins. Co., 133 Mo. App. 345, 112 S. W.

754, for in that case the question was whether a notice to the insured husband was conclusive against the wife, who, as beneficiary in the policy, was wholly unadvised as to the facts pertaining to the foreclosure of the pledge.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.