THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant, v. OLIVE DeLISLE, IDA DeLISLE, NORVAL DeLISLE and RICHARD DeLISLE, Respondents.

Springfield Court of Appeals, May 22, 1916.

1. **LOANS AND PLEDGES: Collateral: Failure of: Liability of Parties.** A loan was made by plaintiff to one of the defendants and the loan contract signed by the other defendants. It was the belief of all concerned that no personal liability would be enforced because of the value of the collateral, which under a mistake of law was pledged as security. On failure of title to the collateral, those personally obligated by the loan contract to repay are not relieved.

2. ———: **Insurance Policy: Personal Obligation.** Plaintiff insurance company and defendants, the insured and his wife and children, entered into an agreement whereby a loan was made by the company on a life policy. Contract set out and examined and *held* that a personal obligation to repay was thereby imposed on defendants.

3. ———: ———: **Payment of Loan: What Not.** Plaintiff insurance company loaned to insured a certain sum, the loan contract being signed by the insured and the other defendants (his wife and children), insured's policy being the pledge. Before the pledge the surrender value of the policy had become vested in the

trustee in bankruptcy of the insured. The fact that the company attempted to apply the surrender value of the policy to payment of the debt, as authorized by the pledge, did not constitute a payment of said loan.

Appeal from New Madrid County Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED *(with directions).*

*Douglas W. Robert, Riley & Riley* and *J. R. Brewer* for appellant.

*Thomas Callivan* and *R. L. Ward* for respondents.

STURGIS, J.—The plaintiff sues in separate counts on three loan agreements signed by the defendants. The defendant Olive DeLisle is the assured and the other defendants are the beneficiaries in the three separate insurance policies involved here, all issued by the plaintiff. The loan agreements sued on were given May 18, 1908 in connection with a pledge of these policies, each pledging the corresponding policy as collateral security. On the date mentioned, these policies were all alive with the premiums paid up, and each possessing a considerable reserve value forming a basis for a surrender or loan value.

The instrument sued on in the first count reads as follows:

"$225.

"This agreement, made this 19th day of May, 1908, between the Equitable Life Assurance Society of the United States, party of the first part, and Olive DeLisle, and Ida DeLisle, wife, and Norval DeLisle and Richard DeLisle, children, parties of the second part,

"Witnesseth: The party of the first part agrees to loan and does hereby loan to the parties of the second part, the sum of two hundred fifty-five dollars, the receipt of which by the parties of the second part is hereby acknowledged; and the said parties of the second part agree to repay the same to the said party of the first part, at its office, 120 Broadway, New York City, on the 19th day of May, 1909.

"In consideration of said loan the parties of the second part hereby assign, transfer and set over all their right, title and interest, including the right to exercise any and all options and privileges, in policy no. 894,473 on the life of Olive DeLisle, issued by said party of the first part, together with all money which may be payable under the same to said party of the first part, as collateral security for the repayment of said loan.

"In the event of default in the payment of said loan upon the date hereinabove mentioned, the party of the first part is hereby fully authorized and empowered, without notice to and without demand of payment by the parties of the second part, to cancel said policy and to apply the cash surrender value of such cancellation to the payment of said loan and any unpaid interest; and upon the maturity of said policy, either by death or lapse of time, the party of the first part is hereby authorized and empowered to exercise any right or option and accept and extend any privilege or other benefit held, possessed or enjoyed by the parties of the second part, or any of them, under the terms and conditions of said policy, including the right to commute any amount due in installments, whether provided for in the policy contract or not. Should the surrender value of said policy exceed the amount of above loan with interest at five per cent thereon, then, and in that case, the excess value above the loan and interest shall be due and payable to the legal owner or owners of the policy on demand.

OLIVE DELISLE        (Seal)
(Name of Insured)
IDA DELISLE        (Seal)
RICHARD DELISLE    . (Seal)
NORVAL DELISLE        (Seal)
(Name of Beneficiaries)"

The agreements sued on in the other counts are similar in form, but describe and pledge different policies of insurance, the second being for $510 and the third for $1363. The court rendered judgment for plaintiff against the defendant Olive DeLisle on each of the three

counts for a total amount of $2873 and for.the other defendants on each of such counts. The plaintiff has appealed claiming that it is entitled to judgment against all the defendants.

The petition alleges and the facts show that because the insured, Olive DeLisle, had been adjudged a bankrupt prior to the attempted pledge of these policies as collateral security, the title to the same proved to be in the trustee in bankruptcy and such pledge entirely failed; that defendants failed to pay the amount of said loans respectively at the time the same became due and judgment is asked for such amounts.

The defendants filed somewhat lengthy answers and, while admitting the execution of the instruments sued on, averred that plaintiff's agent, a Mr. Avery at St. Louis with whom the loans were negotiated, represented that defendants were not binding themselves personally to a repayment of these loans; that the only purpose in requiring these parties, especially the beneficiaries, to sign the loan agreements was to waive their respective rights in the policies and consent to the loans being made on the same to the insured; that defendants were assured that there would be no personal liability on them to repay the loans; that plaintiff's agent by mistake so wrote the loan agreement as to make them personally binding on all the defendants. There was then a prayer to have such loan agreements corrected and reformed so as to express the real intent and agreement of the parties and to make the same the obligation of the insured only.

These allegations of the answer were the ones to which most of the defendant's evidence was directed, but the same need not be considered further here for the reason that defendants now concede that the evidence does not make a case for them on the ground that these instruments or their execution were obtained by fraud or misrepresentation and warranting relief along this line. The defendants conceded in their evidence that no artifice, trick or fraud was used to prevent their reading and knowing the contents of the instruments they signed and that, tested by the rules determining

the validity and binding force of written instruments signed and executed by persons under no disability or infirmity, these defendants cannot be released from the legal effect of the instruments sued on.

In reading the evidence in this case, it is apparent that all the parties, inclusive of plaintiff's agent, believed that there would be no personal liability enforced against these parties on these loan agreements, but such belief arose from the fact that the insurance policies pledged as collateral security for the loans were unquestionably of a value sufficient to pay the loans at maturity. Had the defendants been signing a plain promissory note with these policies pledged as security, their belief as to there being no personal liability would have been the same and arising from the same cause. It is also true, doubtless, that the plaintiff was making these loans, as is generally done, solely on the value of the security and with no care for or thought of the personal liability or worth of those signing the loan agreement. It is well known, however, that many loans on real and chattel security are made in the same way, but no court, so far as we know, has ever ruled that such belief or intent of the parties would be given legal effect so as to relieve one of the binding force of an obligation he had thus signed.

The whole defense in this case arose from a mistake of law as to the ownership of the policies of insurance attempted to be pledged as collateral security for these loans. The insured, Olive DeLisle, had been adjudged a bankrupt prior to making these loans and attempting to pledge the policies as collateral security, the legal effect of which was that his property, including the surrender value of these policies of insurance had vested in his trustee in bankruptcy. Having no title to the policies the attempt to pledge the same as collateral security for these loans was of no validity. The trustee in bankruptcy some time later asserted his right to the surrender value of these policies by a suit in the Federal court and his right was thereby confirmed. [Equitable Life Assurance Co. v. Miller, Trustee, 185 Fed. 98.] In so doing the Circuit Court of Appeals followed

the law as declared by the Supreme Court of the United States in Hiscock v. Mertens, 205 U. S. 202, 51 Law Ed. 771.

It is true that defendants were not parties to that suit and not technically bound thereby, but the trustee's title to these policies is not, strictly speaking, the result of or dependent upon that suit. The judgment in that case confirmed the trustee's title to these policies but did not create it. The trustee's title to these policies is derived from the law relating to bankruptcy and dated from the adjudication of bankruptcy, and not from any court judgment. The judgment of the Federal court merely compelled the plaintiff to recognize the trustee's title. This court has no disposition, even if it had the power, to question the correctness of that ruling.

The defendants insist that the loan agreements sued on here, when properly interpreted in the light of the facts and circumstances under which they were given, should not be construed as importing a personal obligation; that the legal effect of these instruments should be held to be that the loans are payable solely out of the proceeds of the policies and that the loan agreements merely pledged the policies to that purpose without personal liability on the pledgors. This same question came before this court in Gillen v. Insurance Co., 178 Mo. App. 89, 98, where the question was examined and the authorities collected. The cases of Christensen v. Insurance Co., 160 Mo. App. 486, 496, 141 S. W. 6, Paschedag v. Insurance Co., 155 Mo. App. 185, 197, 134 S. W. 102, Smith v. Insurance Co., 173 Mo. 329, 340, 72 S. W. 935, and Bank v. Insurance Co., 81 Fed. 935, are there cited and quoted from as holding that loan agreements similar to the ones sued on here and given for the same purpose are personal obligations to repay the borrowed money in addition to pledges of the policies as collateral security. In the Gillen case the court said: "We think therefore that the loan transaction and agreement had between the insured and the defendant created a personal obligation on the insured to pay the amount of the loan with interest and, as the pledge of the policy was invalid in so far as it authorized, or

rather attempted to empower defendant to compel, the use of the net value of the policy in discharging the loan, such loan was, so far as this case is concerned, nothing but a personal obligation of the insured *and plaintiff* to the defendant." The plaintiff in that case was the beneficiary in the policy who had signed a loan agreement along with the insured. Such also is clearly the holding of the Supreme Court in the Smith case, supra, and that case is binding on this court.

We might remark also that a comparison of the loan agreements sued on here with the ones under consideration in the cases above cited will show that the personal obligation features are here made prominent and unmistakable. In some of the cases mentioned above, especially the Paschedag case, the personal obligation was an implied rather than an express one, but in the present case not only do the parties call the transactions "loans" and charge interest thereon, but in express terms "the said parties of the second part (defendants) agree to repay the same to the said party of the first part at its office 120 Broadway, New York City, on the 19th day of May, 1909."

The answer also contains the following defense to each loan agreement: "And defendants, for further answer and defense, say that said notes have been fully paid and satisfied; that policy number 894,473 was appropriated and converted by the plaintiff to its own use and benefit and that said policy, at the time it was so appropriated was more than sufficient to pay off said loan; that the loan value of said policy at said time exceeded the amount of said note and that said policy at said time was exempt to the defendants herein and that these defendants were not parties to any proceedings in which the proceeds of said policy were paid to R. J. Miller, trustee, and are not bound thereby." In support of this contention of discharge by payment, the defendants rely on the fact that the plaintiff attempted to foreclose the loan agreements as provided by the terms of the pledge and marked each of these policies "cancelled" on a specified date. A large number of authorities are cited to the effect that payment includes

any method of discharging an obligation for a consideration and that payment need not be in money but that any arrangement whereby something of value is given and accepted in discharge of an obligation constitutes payment and that this may be true even if the thing so received afterwards proves of no value. Defendants say that this principle is especially applicable where the real obligation of the parties is that of sureties only, and that such is the obligation of all the parties here other than the insured, Olive DeLisle, who alone was interested in obtaining this loan. It is shown, however, that the loan agreements here were made out on the regular printed forms used by plaintiff in making all such loans and that plaintiff, for obvious reasons, never made loans on policies except to the insured and beneficiaries jointly; also that the checks in payment of those loans were made to all the defendants jointly. It is doubtful, therefore, if any of the defendants sustained the relation of surety on these loan agreements. We think, however, that such fact is in no way material for the reason that there was no payment of these loan agreements in any sense of that term. It is not contended, and could not be, that the mere pledge of the policies as collateral security was itself a payment. The loan agreements provide that payment may be made out of the collateral security in this manner: ''In the event of default in the payment of said loan upon the date hereinbefore mentioned, the party of the first part is hereby fully authorized and empowered, without notice to and without demand for payment by the parties of the second part, to cancel said policy and to *apply the cash surrender value* of such cancellation *to the payment of said loan* and any unpaid interest.'' The pledge or attempted pledge of the policy as collateral security is in reality the pledge or attempted pledge of the cash surrender value, such cash surrender value following, of course, the ownership of the policy. It is, however, this cash surrender value of the policy which by section 70 of the Bankrupt Act, on an adjudication of bankruptcy, *ipso facto* and of that date, vests in the bankruptcy trustee. [Hiscock v. Mer-

194 M. A.—4

tens, supra.] Any attempt, therefore, of the plaintiff to apply this surrender or reserve value in payment of this loan was utterly void and absolutely nothing passed from the insured to the plaintiff in payment of the loan. Such surrender value had vested in the trustee in bankruptcy before either the attempted pledge or the attempted foreclosure thereof.

Such is the effect of the decisions heretofore noted as holding that the loan agreement imported a personal obligation in addition to a pledge or attempted pledge of the policies as collateral. Such pledge, or attempted pledge, as we have just seen, is in reality a pledge or attempt to pledge the reserve or surrender value of the policy and in all the cases above mentioned (Gillen v. Insurance Co., Smith v. Insurance Co., etc.), the court held the attempted pledge void and of no effect because in contravention of our statute prohibiting any such pledge except in payment of loans for past due premium payments. In the Christensen case, supra, the court said: ''The fact that the attempted pledge of a portion of the net reserve available to the purchase of extended insurance was invalid is of course without influence as to the indebtedness itself.'' In each of the cases mentioned the court treated the attempted pledge and attempted cancellation of the policy in foreclosure of the pledge as being void and without effect on the personal obligation contained in the loan agreement. Nothing has been shown here which can have the effect of payment or discharge of the personal obligation of any of the defendants.

The case is therefore reversed and remanded with directions to the trial court to enter judgment against all the defendants as prayed for.

*Robertson, P. J.,* and *Farrington, J.,* concur.