APPEAL OF ANNIE S. KENNEDY ET AL., EXECUTORS, ESTATE OF D. J. KENNEDY, DECEASED.

Docket No. 5244.   Decided July 23, 1926.

1. The value of certain shares of stock forming a part of the gross estate of the decedent determined.

2. Loans on insurance policies on the life of the decedent, in which the widow of the decedent was beneficiary, deducted from the face of the policies in making settlement thereunder, *held* not to constitute claims against the estate of the decedent.

*William B. Secrist, Esq.,* for the petitioners.
*J. F. Greaney, Esq.,* for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

The petitioners admit a deficiency in estate tax in the amount of $20,379.11, but appeal from the determination of a deficiency of $16,418.57 in excess of that amount. The points in issue are the valuation of certain shares of stock owned by the decedent at the date of his death, and the right of the executors to deduct from the gross estate certain loans on insurance policies on the life of the decedent deducted from the face of the policies in making settlement thereunder.

FINDINGS OF FACT.

The petitioners are executors of the estate of D. J. Kennedy, who died August 5, 1923, a resident of Pittsburgh, Pa.

The return for Federal estate tax filed by the petitioners showed a net estate of $800,026, and a tax due of $35,500.02. The Com-

missioner determined the net estate to be $1,207,976.96 and the total tax liability to be $72,297.70, or a deficiency in tax of $36,797.68.

At the date of death, the decedent owned 2,098 shares out of a total issue of 2,100 shares of stock of the Bulger Block Coal Co., a Pennsylvania corporation, the value of which stock was returned for estate-tax purposes at $712,152. The value of this stock was placed by the Commissioner at $1,026,131.80. This stock is not dealt in on any stock exchange and its value was arrived at by the Commissioner by an appraisement of the corporate assets. In his appraisement the Commissioner included among the assets of the company an insurance policy for $15,000 on the life of the decedent, which policy named the company as beneficiary. This asset was computed to have a value of $15,000, even though the surrender value at the date of death of the decedent was only $3,000. The Commissioner also included among the assets of the company 1,060 shares of stock of the Superior Mining Co., upon which he placed a value of $60 per share, total $63,600. The taxpayer alleges error in appraising these two assets at any amount in determining the value of the 2,098 shares of stock of the Bulger Block Coal Co.

The Superior Mining Co. was organized in 1917 but did not start profitable operation until 1919. During the year 1923 it had 5,900 shares of capital stock outstanding of a par value of $100 each. These shares were all paid for in cash at par. This company acquired and owned 1,600 acres of coal land, and up to January 1, 1925, it had mined out 184 acres. The results of operations for the years 1920 to 1923, inclusive, were as follows:

| | |
|---|---|
| 1920 earnings | $148,829.07 |
| 1921 earnings | 36,625.95 |
| 1922 earnings | 31,308.76 |
| 1923 earnings | 9,922.65 |

The company also operated at a loss after deducting from gross income allowable amounts for depreciation and depletion for the years 1924 and 1925. On July 31, 1923, it had capital stock outstanding and a surplus of $590,000 and $18,120.19, respectively. Among its assets it had coal lands which were carried at a value of $433,025.07, and miners' houses, and machinery and equipment at $200,681.24 and $298,093.66, respectively. It had bonds outstanding of $320,000 and notes payable and accounts payable of $50,194.39, and accrued bond interest of $1,600.

In May, 1925, 100 shares of the stock of this company put up as collateral for a loan were sold at $10 per share. This is the only sale of the stock known to the officers of the Superior Mining Co.

The decedent also owned 1,812 shares of a total issue of 1,814 shares of stock in the D. J. Kennedy Co., a Pennsylvania corpora-

tion. These shares of stock were returned by the petitioners for estate-tax purposes at $280,860. The value determined by the Commissioner was $298,690.06. Shares of stock of this company were not dealt in on any market and their value was arrived at by the Commissioner by an appraisement of the corporate assets. In arriving at this value the Commissioner included in the corporate assets $10,000, which was the face amount of an insurance policy on the life of the decedent in which the D. J. Kennedy Co. was beneficiary and on which the premiums had been paid by it. The surrender value of the policy at the date of the death of the decedent was $2,000.

At the date of death, the decedent's life was insured by a number of policies for a total of $115,669.26. The widow of the decedent was the beneficiary under all of these policies. No part of this insurance was included in the gross estate, as shown by the estate-tax return filed by the petitioners, but there was deducted from the gross estate $50,613.90, which represented loans made to the decedent in his lifetime by the insurance companies upon the policies as collateral. The Commissioner added to the gross estate shown by the estate-tax return the face value of the policies in excess of $40,000, or $75,669.26, but did not disallow the deduction of the $50,613.90 as represented by loans made upon the policies.

OPINION.

SMITH: The Commissioner increased the value of the gross estate of D. J. Kennedy, deceased, in the amount of $407,950.96 but did not change the amount of the deductions. The petitioners took exception to only a portion of the increase made by the Commissioner in the value of the gross estate.

The Commissioner now admits error in adding to the gross estate $75,669.26, which is the amount of the proceeds of insurance policies paid to the widow of the decedent in excess of $40,000, but by appropriate pleading claims that there should be disallowed from the deductions $50,613.90, representing the amount of loans upon the policies, which amount was deducted from the face of the policies in making settlement to the widow.

(1) The Commissioner determined the value of 2,098 shares of Bulger Block Coal Co. owned by the decedent at the date of his death by appraising the value of the assets of that company and by deducting from such appraised value the liabilities. In making this determination he valued an insurance policy owned by the Bulger Block Coal Co. upon the life of the decedent at its face value, $15,000, although the surrender value at the date of his death was only $3,000. Petitioners allege error in this respect, claiming

that the insurance policy should not be included at any value whatever. They also allege that he erred in valuing 1,060 shares of stock of the Superior Mining Co. owned by the Bulger Block Coal Co. at $60 per share, total $63,600. They contend that these shares had no value whatever at the date of the death of the decedent. The net result of their contentions with respect to the valuation of the 2,098 shares of Bulger Block Coal Co. stock is an allegation that the Commissioner overvalued this stock to the extent of $78,600; . that, valuing the stock upon the basis of the value of the assets, the Commissioner should have increased the returned value only $235,379.80 and that the further increase to $313,979.80 was error.

Relative to the value at which the insurance policy should be included in the assets of the Bulger Block Coal Co., the Commissioner cites the decision of the court in *In re Einstein's Estate*, 186 N. Y. S. 931, affirmed 193 N. Y. S. 931. In that case the decedent assigned certain policies of insurance in contemplation of death. In determining the value thereof for purposes of the state inheritance tax, the policies were included at the full amount payable on death, although the act provided that the value to be included was the value as of the date of the transfer. The surrogate rejected the claim of the taxpayer that the insurance policies should be valued at their cash surrender value and held that the value at the time of the transfer was the value at the date of the death of the decedent three days later.

The taxing statute requires assets to be included in the gross estate at their value at the time of the death of the decedent. This was not the value at any time before death but at the exact moment of death. In our opinion, the value of the insurance policy now under consideration was, at the moment of death, its face value, which is the amount used by the Commissioner.

Relative to the value of the shares of stock of the Superior Mining Co. owned by the Bulger Block Coal Co., the evidence of record shows that the bituminous coal business was much depressed in 1923, and that although the Superior Mining Co. had large coal reserves and a large plant, it had only a small amount of current assets. The company had to meet a large amount of interest on its bonds each year and had to pay off $35,000 of its bond indebtedness each year. Whether it would be able to make such payments from the profits of operation during the succeeding years was in 1923 very uncertain. We are of the opinion, however, that the stock had a cash value in 1923, and upon the entire evidence we determine that value to have been $10 per share.

We therefore think that the Commissioner was justified in increasing the reported value of the shares of the Bulger Block Coal Co.

owned by the decedent to the extent of $260,979.80, but that the further increase of $53,000 was error.

(2) The petitioners contend that the Commissioner erred in his valuation of 1,812 shares of stock of the D. J. Kennedy Co. by including among the assets of the company an insurance policy of $10,000 at its face value rather than at $2,000, its cash surrender value. This insurance policy, the same as that owned by the Bulger Block Coal Co., was on the life of the decedent and was payable to the company. For reasons above stated, we are of the opinion that the insurance policy was properly included by the Commissioner at its face value rather than at its cash surrender value.

(3) The petitioners deducted from the gross estate in the estate-tax return $50,613.90, which represented the amount of loans which had been made upon certain insurance policies upon the life of the decedent, the beneficiary named in these policies being Annie S. Kennedy. The Commissioner allowed these deductions to stand on the return but added to the gross estate $75,669.26, this being the amount of the insurance in excess of $40,000. The Commissioner now admits that this addition was in error, under the decision in *Llewellyn* v. *Frick*, 268 U. S. 238, but by appropriate pleading claims that the $50,613.90 claimed as a deduction from the gross estate was not a proper deduction in that it was not a " claim against the estate " within the meaning of section 403 (a) (1) of the Revenue Act of 1921. In support of his contention he cites the case of *Orleans Parish* v. *New York Life Insurance Co.*, 216 U. S. 517, in which case the United States Supreme Court held that certain amounts loaned or advanced to policyholders in Louisiana upon the security of the policies were advancements of the insurance reserve by the company rather than loans. The petitioners, on the other hand, rely upon the decisions of the courts in *Equitable Life Assurance Society* v. *De Lisle*, 194 Mo. App. 42; 182 S. W. 1026; *Travelers' Insurance Co.* v. *Lazenby*, 16 Ala. App. 549; 80 So. 25; and contend that loans made on insurance policies are claims against the individual to whom the money is loaned.

The petitioners have not placed in evidence the agreements made between the decedent and the insurance companies relative to these loans. Apparently, in all cases Annie S. Kennedy was the beneficiary of the policy at the time the loans were made. The policies invariably provided that the insurance company, in making settlement under them, would deduct from the amount payable to the beneficiary any and all indebtedness to the company in respect of the policy. Such deductions were actually made in making settlement for the policies.

The cases cited by the petitioners in support of their contention that the amounts borrowed on the policies were claims against the

estate of the decedent are not in point; for in those cases the insurance companies were not able to deduct from the face amount of the policy at the time of settlement the amounts borrowed on the policies, and the courts held, in view of the undertakings of the borrowers, that they were personally liable for the amounts borrowed. In the instant proceeding the insurance companies were able to deduct from the face of the policies, in making settlement thereunder, the amount of the loans upon the policies. Since they were enabled to make such deductions, there was no claim against the estate of the decedent for the payment of the loans, even though the decedent himself may have obligated himself to make payment. We are therefore of the opinion that upon the record before us there is no proof that the insurance companies had any claim against the estate of the decedent for the amounts loaned upon the policies, and that the motion of the Commissioner to disallow the proposed deduction of the $50,613.90 is correct.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*